The International & Great Northern Railway Company
v. Katie Turner et al.

No. 252.

1. **Assumption of Risks by Servant.**—Turner was killed while coupling cars in slow motion, by reason of his foot being caught in a frog, and because there was no fireman on the engine to receive his signal to stop, which was given when he found his foot caught. The engine had been operated in the yard without a fireman during the whole time that Turner had been in the service, and he knew it. The general rule is, that the servant assumes not only the ordinary risks of the employment, but also of those superadded by negligent omission of the master to perform a duty to the servant, which are known to the servant.

2. **Modification of Rule—Complaint of Servant.**—A modification of the rule exists where, upon discovery of defective machinery or appliances, or other dangerous condition arising from an omission of duty on the part of the master, the servant complains to the master, and receives such promise or assurance as to make it reasonable for him to assume that the deficiency will be supplied before he is exposed to injury from it. In such case the presumption of an assumption of risk arising from a continuance in the service is said to be rebutted.

3. **Same—Servant's Option.**—When the servant knows of defective appliances, he has the option of taking upon himself the risks of continuing in the employment, or quitting. He may relieve himself of the risk if he brings the facts to the knowledge of the master, and receives such promises or assurances as either to show an express assumption of the risk by the master, or to afford the servant reasonable guaranty that the danger will be removed in time to prevent injury to him. To have either of these effects, what has passed between them should appear to have had in view either a transfer of the risk from

the servant to the master, or the removal of the dangerous condition, as a protection to the servant.

4. **Facts which do not Show Liability of Master.**—There came up a dispute between Turner and the vice principal about the delay of trains, and Turner explained that he could not possibly do the work with one man to handle the engine, without any fireman or assistant, and the vice principal promised to see to getting him a fireman at once. Turner neither complained of his own risk nor asked for protection. The fireman was to be furnished to forward the master's business, and not as a discharge of duty to or a measure of protection to the employe, and it is not shown that Turner was induced to continue his work by anything said by the vice principal.

5. **Erroneous.Charge.**—See charge given, held to be erroneous.

ERROR from Leon. Tried below before Hon. NORMAN G. KITTRELL.

The opinion states the case, except the language of the charge complained of, which is found in the first assignment of error.

*Cate & Teagarden*, for plaintiff in error.— 1. The court erred in submitting to the jury in the main charge clauses 15 and 16 in connection with clause 14, which, with the two objectionable clauses, are as follows:

" 14. If the railroad company did not provide a fireman for the left side of the engine, and Turner, knowing it was dangerous and hazardous to attempt to do the work without such fireman, and so knowing, continued in the work, and while so doing was, by reason of such want of a fireman, run over and killed, the plaintiff can not recover.

" 15. In this connection, and to be considered with the preceding paragraph, you are instructed, that if Turner complained of the want of a fireman to the officer whose duty it was to provide one, and that the superior officer to whom he complained was empowered to supply such deficiency, and promised to do so, you will then determine whether Turner was guilty of negligence in continuing in the work on the faith of such promise; and on this point you are instructed as follows:

" 16. That if such complaint was made and such deficiency promised to be supplied, the deceased, Turner, had the right to rely upon such promise and continue in such work for a reasonable length of time under the circumstances, if he had reasonable expectation that such promise would be carried out, unless the danger of the attempt to do the work was so patent and so plain and obvious that a prudent and cautious railroad man would not have attempted it. If such danger was so patent and obvious, Turner had no right to continue to do it; and if he did so, or if he continued beyond a reasonable time, he was deprived of his right to damages, and plaintiffs can not recover; but if the danger was not so patent and obvious, and Turner had reasonable expectation that such deficiency would be supplied, and was justified in believing that by care he could safely do the work, and while so doing was within such reasonable time killed by reason of such want of a fireman alone, or by reason of

such deficiency as to a fireman and such defect as to frog and rails, if any, plaintiffs are entitled to recover. Whether he continued or not in such work beyond a reasonable time under all the circumstances is for you to say." Railway v. Williams, 82 Texas, 342; Railway v. Drew, 59 Texas, 12; Lewis v. Railway, 26 N. E. Rep., 431; Whart. on Neg., secs. 213–221; Shearm. & Redf. on Neg., secs. 210–215.

2. The evidence in this cause showing, that for two years prior to Turner's death, Turner had performed the duties of yardmaster at Willis, with an engine operated by the engineer alone, without the aid of an assistant, and there being nothing to show that this condition did not exist at the time he accepted said employment, and it further appearing that he had voluntarily performed his duties throughout said employment without protest (except as testified to by the witness Mays), the law implies that Turner, by the contract of employment, voluntarily assumed the risk of extra hazards resulting from the want of additional force upon the switch engine. Railway v. Brentford, 79 Texas, 619; Rogers v. Railway, 76 Texas, 502; Railway v. Bradford, 66 Texas, 734; Watson v. Railway, 58 Texas, 434; Railway v. Barrager, 14 S. W. Rep., 242; Whart. on Neg., secs. 214–221.

3. If under these conditions Turner was no longer willing to assume the risks from the insufficiency of the force upon the engine, and desired to transfer the same to the shoulders of the defendant, he could only do so by a complaint and protest which, in their language, would reasonably indicate the ground upon which they were based, and containing an implied or express intention upon his part to abandon the service unless assured that the hazard attending his employment would be removed; and such assurance should be sufficient to induce a confidence in him to remain in the service a reasonable length of time within which the promise could be performed. Railway v. Drew, 59 Texas, 10; Railway v. Somers, 78 Texas, 439; Whart. on Neg., secs. 214–221; Cool. on Torts, 559; Railway v. Liehe, 29 Pac. Rep., 144.

On the sufficiency of the special charge to direct the attention of the court to the error: Kirby v. Estill, 75 Texas, 484; Tel. Co. v. Andrews, 78 Texas, 305; Railway v. Hodges, 76 Texas, 90; Lewis v. Railway, 26 N. E. Rep., 431; Lyttle v. Railway, 47 N. E. Rep., 571; 47 Am. Rep., 428; Railway v. Barber, 5 Ohio St., 541; Railway v. Brentford, 79 Texas, 619; Wood's Mast. and Serv., secs. 380, 382, 394, 395.

*T. M. Etheridge* and *Etheridge & Dashiell,* for defendant in error.

1. If the servant complain of the defect in machinery or of the insufficiency of the force, and the master promises to supply such defect or to supply such insufficiency, the servant may for a reasonable time, relying upon such promise, remain in the service, provided it were not negligence for him to so remain notwithstanding such promise. 2 Thomp.

on Neg., 1009, sec. 16; Wood's Mast. and Serv., secs. 378, 380; Hough v. Railway, 100 U. S., 213.

2. If the servant complain of the defect, such complaint is sufficient, and it does not devolve upon him to complain of the danger consequent upon such defect, as the master, by his superior knowledge, is by law presumed to know better of the danger consequent upon such defect than the servant. Railway v. Donnelly, 70 Texas, 371; 2 Thomp. on Neg., 1009, sec. 16; Hough v. Railway, 100 U. S., 213; Wood's Mast. and Serv., secs. 378, 380.

WILLIAMS, ASSOCIATE JUSTICE.—This is an action by the widow and children of Lee Turner to recover damages resulting from his death, alleged to have been caused by negligence of defendant while said Turner was in its service.

The negligence charged against the defendant consisted in a failure to furnish a fireman upon a switch engine in the yard at Willis, where Turner was killed, and to keep in proper repair the frog of a switch in which Turner's foot was caught while attempting to uncouple cars.

Turner was master of defendant's yard at Willis, and had been for about two years prior to his death.

On October 5, 1888, during the night, Turner entered between two cars of a freight train to uncouple them while they were slowly moving, and finding difficulty in drawing out the pin, he walked along with the running cars until he reached the switch, when his foot was caught between the two rails and held fast until he was thrown down and run over. When he realized that his foot was fastened he gave the alarm, and a servant of the defendant signalled to the engineer to stop. The engineer was at his station on the side of the engine opposite to that on which stood the servant who gave the signal, and did not therefore see it. Had there been a fireman on the engine his station would have been on the side of the engine from which the signal came, and the plaintiffs' contention is, that he would have received the warning and the train could have been stopped before it passed over Turner's body.

Turner knew that there was no fireman upon the engine. It had been operated by an engineer alone during the whole of the time of Turner's service at that place. To meet the objection, that he assumed the risk resulting from the absence of a fireman, plaintiffs alleged, and sought to prove, that shortly before his death he protested against the use of the engine without a fireman, and received from his employer an assurance that one would be supplied in a reasonable time, and a request to continue in the service; and that upon faith in such assurance and promise, he had continued in the discharge of his duties not longer than was reasonable at the time he was killed.

The only evidence upon this point is in the statement of the witness

May, as follows:  "I heard Mr. Turner complain to Mr. Mulvey, the train master, about the want of a fireman on said engine.  I can not say the fireman and engineer were under Mr. Mulvey's control or charge; I do not suppose they were; but at the same time we had a channel of business to go through; we had to make an application to Mr. Mulvey, and he to the officer over him.  The yard force at Willis was under his (Mulvey's) charge—in his division.  As nearly as I recollect, the conversation between Turner and Mulvey with reference to a fireman was about this:  There came up a little dispute about the delay of trains; Mr. Mulvey came up to settle the matter one night during my service, and Mr. Turner explained to Mr. Mulvey that we could not possibly do the work with one man to handle the engine without any fireman or assistant; Mr. Mulvey says, ' I will see to getting you a fireman at once.' "

The charge of the court submitted to the jury the question, whether or not Turner had complained of the want of a fireman and received a promise that the deficiency would be supplied; and instructed them, if such complaint was made and such promise given, that Turner had the right to rely on it and continue in the work for a reasonable time, if he had reasonable expectation that such promise would be carried out, unless the danger of the attempt to do the work was so patent and obvious that a prudent and cautious railway man would not have attempted it.

The general rule is, that the servant assumes not only the ordinary risks of the employment, but also of those superadded by negligent omission of the master to perform a duty to the servant which are known to the servant.  A modification of the rule exists where, upon discovery of defective machinery or appliances, or other dangerous condition arising from an omission of duty on the part of the master, the servant complains to the master and receives such promises or assurances as to make it reasonable for him to assume the deficiency will be supplied before he is exposed to injury from it.  In such a case the presumption of an assumption of the risk arising from a continuance in the service is said to be rebutted.  This doctrine is recognized in this State, though its precise limits and the principle upon which it rests may not be entirely settled.

We do not think the facts of this case make it applicable here.  There was no complaint by Turner of a deficiency in the force of employes exposing him to danger.  There was no promise on the part of the master to remedy any such condition for the protection of the servants.  The subject of discussion was delay in moving trains, and the complaint came from the master.  The deficiency in the force was referred to as an excuse for that, and what the master said was not an assurance given to the servant to induce him to remain in the service, but was addressed to the advancement of his own business.

When the servant knows of defective appliances or dangerous conditions surrounding the service, he has the option of taking upon himself

the risks of continuing in the employment or of quitting. He may relieve himself of the risk if he brings the facts to the knowledge of the master and receives such promises or assurances as either to show an express assumption of the risk by the master, or to afford the servant reasonable guaranty that the danger will be removed in time to prevent injury to him. To have either of these effects, it would seem that what has passed between them should appear to have had in view either a transfer of the risk from the servant to the master or the removal of the dangerous condition as a protection to the servant. In other words, the master should have induced the servant to waive his right to leave the dangerous employment, either by taking upon himself the responsibility for injuries which might result, or by leading the servant to believe that the duty to repair the appliances or supply the deficiency would be performed within reasonable time.

The facts here do not show that either of these things was done. Turner neither complained of his own risks nor asked for protection. He said nothing calling in question the master's duty to himself. While a promise was made to furnish a fireman, it was to be done in order to forward the master's business, and not as a discharge of a duty or measure of protection to the employes. The master having made the statement expressly for his own benefit, could change his mind about furnishing the fireman without violating any obligation assumed to Turner. It may be true that the defendant was originally under obligations to furnish a fireman in order to make the operation of the engine safe. If so, it had never performed it, but, with Turner's knowledge, had disregarded it for at least two years. The risk resulting from the absence of the fireman was the same during the whole of Turner's service, and he had never complained of it. Nothing transpired in his conversation with Mulvey showing that he was induced to continue his work by anything then said.

The decision in the case of Gulf, Colorado & Santa Fe Railway Company v. Donnelly, 70 Texas, 371, does not, as we understand it, conflict with these views. The liability in that case is not rested by the decision upon the doctrine under discussion, though it was applied in the lower court and was referred to in the opinion. The right of Donnelly to recover was held not to be defeated by the fact that he had known the track to be dangerous for the passage of trains, because it was not dangerous to him when passing over it on a hand car. In short, it was held that he was not chargeable with notice of the defect which caused the injury.

The charge submitting this phase of the case to the jury was erroneous, and for this the judgment must be reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 22, 1893.