# DECISIONS

# Court of Appeals of Kentucky.

## SEPTEMBER TERM, 1902.

CASE 1—ACTION BY VICTOR C. REISER TO RECOVER DAMAGES FOR PER-
SONAL INJURIES.—OCTOBER 21.

# Reiser v. Southern Planing Mill & Lumber Company.

114  1
f124  526

114  1
137  423

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. AFFIRMED.

INJURY TO EMPLOYE—DEFECTIVE MACHINE—PROMISE TO REPAIR—
KNOWLEDGE OF SERVANT—ASSUMPTION OF RISK—LIABILITY OF
MASTER—CONTRIBUTORY NEGLIGENCE.

Held: 1. A servant is not exonerated from the duty of exercising
ordinary care for his own safety from the use of defective ma-
chinery, of which he had knowledge, because of a promise of the
master to repair such defects.

2 While the law imposes on the master the duty to provide suit-
able machinery for the use of the servant, if the servant has
knowledge that the machinery is defective and he continues
to use it without complaint he assumes the risk therefrom
and waives the right to hold the master liable in case of in-
jury.

3. If, however, the servant does complain and the master promises
to repair the machinery in a reasonable time, then the mas-
ter can not rely upon the knowledge of the servant of the
defective condition of the machinery so as to relieve himself
from responsibility, but this principle does not go to the ex-
tent of holding the master liable for an injury which results
from the negligence of the servant, and not from the defect
in the machinery.

Vol. 114—1

Reiser v. Southern Planing Mill & Lumber Co.

MATT O'DOHERTY, BENNETT H. YOUNG AND MARION W. RIPY, FOR APPELLANT.

We urge but one error of the trial court in this appeal and that was the failure to instruct the jury along the lines of instruction No. 1, offered by appellant, which is as follows: "The court instructs the jury that the law made it the duty of the defendant to observe ordinary care to have and maintain the machine upon which plaintiff was working in its service when injured, in a condition reasonably and adequately safe and sufficient for the use of the plaintiff and if the jury shall believe from the evidence that the said machine was not in such adequately and reasonably safe condition, and shall further believe that the plaintiff called the attention of the defendant's foreman in charge of the shop in which he was working, to the condition of said machine, and that he, plaintiff, was assured or promised by said foreman that said machine or the defects, if any, therein, would be repaired within a reasonable time, and if the jury shall further believe that the plaintiff relied upon the promise or assurances so given, if so given, and that within such time thereafter as was reasonable to allow for the performance of said promise, plaintiff received the injuries by him alleged, by reason of and because of the defective condition of said machinery, then the jury should find for the plaintiff."

There is no question in this case that appellant knew of the dangerously defective condition of the machine, for he had complained to his superiors and told them of its condition and they had both promised to repair it or replace it with a new one in a few days. Appellant acted on this promise as he had a right to do and continued to use it, but within two days thereafter he met with this accident.

We claim that we were entitled to have this case submitted to the jury by an instruction along the lines indicated in the one we offered, and we insist that in the instructions given the trial court erred to our prejudice.

### AUTHORITIES CITED.

Brown v. Levy, 20 R., 1726; Shearman & Redfield on Neg., 5 ed., sec. 215; Beech on Contributory Negligence, 372; Breckinridge Co. v. Hicks, 94 Ky., 362; Earl Fruit Co. v. Curtis, 116 Cal., 162; Jackson Shook, 7 W. P. v. Shera, 8 Ind. App., 330; Bailey v. Tygart Val. Iron Co., 10 R., 676; Gamble v. Mullin, 74 Ia., 99; Eureka Fertilizer Co. v. Baltimore Export Co., 78 Ind., 179; Henning v. Globe Foundry Co., 112 Mich., 616; Levy v. Cunningham, 56 Neb., 348; Patterson v.

Reiser v. Southern Planing Mill & Lumber Co.

Westchester Elec. Ry. Co., 49 N. Y., 796; Holmes v. Whittaker, 24 Ore., 319; Chappell v. Trent, 90 Va., 849.

FRED FORCHT, JR. AND FORCHT & FIELD, ATTORNEYS FOR APPELLEE.

The machine upon which appellant was injured was not complicated; the dangers connected with its operation were as plain as the nose on a man's face, and where the danger is so obvious and palpable the servant assumes the risk notwithstanding the promise to repair. ·In this case there was a general promise to repair but no time fixed in which to make the repairs. The instructions given were fair and impartial, and the jury must have found from the evidence that appellant was not exercising ordinary care for his own safety at the time he was injured.

### AUTHORITIES CITED.

Shearman & Red. on Neg., vol. 1, sec. 215; Dist. of Columbia v. McElligott, 117 U. S., 632; McKelvey v. Ry. Co., 35 W. Va., 500; Marsh v. Chickering, 101 N. Y., 396; Corcoran v. Gas Co., 81 Wis., 191; Meador v. Lake Shore Co., 138 Ind., 290; St. L. & R. Co. v. Kelton, 55 Ark., 483; Standard Oil Co. v. Helmick, 148 Ind., 457; Ind., &c. R. R. Co. v. Watson, 114 Ind., 30; Conroy v. Vulcan Iron Works, 62 Mo., 35; Hough v. Ry. Co., 100 U. S., 213; Weber v. Piper, 38 Hun., 353; Ft. Wayne J. & S. R. Co. v. Gildersleeve, 33 Mich., 133; Union Mfg. Co. v. Morrissey, 40 Ohio St., 148; Sweeney v. Envelope Co., 101 N. Y., 520; Hannagan v. Smith, 28 App. Div., 176; 50 N. Y. S., 845; McCormick Har. Machine Co. v. Liter, decided February 19, 1902, see 23 R., 2154.

OPINION OF THE COURT BY JUDGE BURNAM—AFFIRMING.

The appellant, Victor Reiser, an infant, instituted this action by William Reiser, his next friend, against the appellee, the Southern Planing Mill & Lumber Company, to recover damages for the loss of three fingers from his left hand. He alleged in his petition "that whilst he was running a board over the knives of a joiner in defendant's planing mill his left hand came in contact with the knives of said joiner, and three fingers of his left hand were cut off; that the accident was due to the fact that the knives were

dull, and unfit for the purpose for which they were being used, which fact was known to the defendant; that shortly before the accident he complained to the defendant and its officers and agent and employes, and gave them notice of the dangerousness, dullness and defectiveness, and unfitness of the aforesaid knives, and that they then and there promised to provide good, sharp, new and safe knives within a reasonable time for said joiner, which they failed to do; that, relying upon this promise, he continued to work for several days, and by reason thereof received the injury complained of." By amended petition he alleges "that the joiner which he was engaged in operating when the injury occurred was at the time in a defective and dangerous condition, and that he complained of it shortly prior to his said injury, calling the attention of the defendant's officers and agents in charge of said planing mills, and superior to plaintiff in defendant's service, and whose duty it was to inspect and repair said machine, to its condition; that the defendant, by said officer and agents, promised to repair the same; and that, relying on said promise, he remained in the defendant's service, and continued to operate said machine, and was so operating it when injured, and within a reasonable time after the making of said promise to allow for its performance; that the injuries complained of in his petition were caused by reason and because of the defective and dangerous condition of said machine, and by the gross negligence of the defendant in having said machine in such defective condition, and in failing to repair same." These allegations were controverted in the answer, and a general plea of contributory negligence relied upon. The testimony in the case shows that appellant Reiser was 19 years of age, and that he had been in the employ of the appellee in its planing mills for about three years, and that

he had been in charge of and working upon the joiner which
is complained of for about a year and a half. He testi-
fied that the blades were dull, and that two or three days
before the accident he asked the appellee's agent, whose
duty it was, to sharpen them, who informed him that they
could not be sharpened any more, that they were too short,
that the company would have to get new ones; and that he
also notified Olaf Anderson, the boss in charge of the shop,
that he would not work on the machine unless it was fixed
up, and that he told him to go ahead and work on it, that it
would be fixed in a couple of days; and that, relying upon
this promise, he continued to operate the machine; that a
few days after this conversation, whilst he was running
a board over the joiner, the bits threw the board over, and
his hand slipped on the knives; and that the jumping of the
board was because the knives were dull and out of fix. And
his testimony as to the dullness of the knives was corrob-
orated to some extent by the testimony of Welsh, who was
put in charge of the machine after his injury.  On the other
hand witnesses for the defendant testify that the ma-
chine was in good order, and that there was nothing wrong
with the knives or bits at the time of the accident; that
the knives were sharp, but that, even if they had been
dull, as testified to by appellant, it would not have oc-
casioned the injury; that the board would have slipped
over them without making any kind of cut; that another
man was put in charge of the machine immediately after
the accident to the appellee, without any change having
been made therein, and that it worked all right.  And
Anderson, the boss, denies that plaintiff had made any
complaint to him about the joiner not being in good con-
dition.  At the conclusion of the evidence the plaintiff
asked the court to give the following instruction to the

jury· "The court instructs the jury that the law made it
the duty of the defendant, the Louisville Planing Mill Com-
pany, to observe ordinary care to have and maintain the
machine upon which the plaintiff was working in its ser-
vice when injured in a condition reasonably and adequate-
ly safe and sufficient for the use of the plaintiff, and if
the jury shall believe from the evidence that said ma-
chine was not in such adequately and reasonably safe con-
dition, and shall further believe that the plaintiff called
the attention of the defendant's foreman in charge of the
shop in which he was working to the condition of the said
machine, and that he (the plaintiff) was assured or prom-
ised by said foreman that the said machine, or defects,
if any, therein, would be repaired within a reasonable time;
and if the jury shall further believe that the plaintiff re-
lied upon the promise or assurance so given, if it was
given. and that within such time thereafter as was rea-
sonable to allow for the performance of said promise the
plaintiff received the injuries by him alleged· by reason
and because of the defective condition of said machine—
then the jury should find for plaintiff,"—which the trial
court refused, but in lieu thereof instructed the jury as
follows: "(1) It was the duty of the plaintiff, when he
accepted employment from the defendant, to exercise or-
dinary care for his own safety, and not knowingly to ex-
pose himself to unnecessary risks or dangers connected
with his said employment. And the court instructs the
jury that the plaintiff, when he accepted employment from
the defendant to operate the machine known as a 'joiner,'
assumed all the risks incident to such employment; that
is, such risks as naturally arose out of, or were necessar-
ily connected with, said employment. But he did not as-
sume risks that were unknown to him, and which were

not incident to his employment, nor such risks which the defendant could, by the exercise of ordinary care, have guarded against. (2) The court instructs the jury that it is the duty of the defendant, the Southern Planing Mill & Lumber Company, when it employed the plaintiff, to exercise ordinary care in providing him with a reasonably safe machine or joiner; that is, one in good order, and fitted for the purpose and work for which it was intended. It was also the duty of the defendant to exercise ordinary care in keeping the same in reasonably safe condition for the use of the plaintiff while he was so engaged in operating the said machine. (3) The court instructs the jury that if they believe from the evidence that the injury of the plaintiff complained of was caused by the failure on their part to perform its duties as defined in instruction No. 2, then the law is for the plaintiff, and the jury should so find, unless the jury shall believe from the evidence that the plaintiff himself failed to perform his duty, as defined in instruction No. 1, and that for such failure on his part the accident would not have happened; in which latter event the law is for the defendant, and the jury should so find. (4) The court instructs the jury that if they believe from the evidence that the injury of the plaintiff complained of in his petition was not the result of any defect in the machine joiner, but was the result of a risk or danger as naturally arose or grew out of the plaintiff's employment, and was naturally attended upon said employment, then the law is for the defendant, and the jury should so find. (5) The court instructs the jury that if the injury complained of was not the result of a risk or danger incident to said employment, but could have been prevented by the exercise of ordinary care on the part of the defendant in the performance of its

duty, as defined in instruction No. 2, then the law is for the plaintiff, and the jury should so find, unless the jury shall also believe from the evidence that by the exercise of ordinary care on his part the plaintiff could have prevented said injury; in which latter event the law is for the defendant, and the jury should so find."

The trial resulted in a verdict and judgment for the defendant, and we are asked to reverse the case because of the failure of the trial court to give the instruction offered by the plaintiff; and the contention is made that, when an employe has notified a master that a machine upon which he is employed is not in good condition, and objected to continuing work thereon, and is induced to do so by a promise to repair the machine within a reasonable time, that for such time the employe assumes no risk from its operation; that the master, in effect, during this interval, guaranties the employe against any and all injury resulting from the operation of such machine. This contention is based upon the principle of law which is very clearly defined in Sherm. & R. Neg., (5th Ed.), section 250, in these words: "There is no longer any doubt that, where a master has expressly promised to repair a defect, the servant does not assume the risk of an injury caused thereby within such a period of time after the promise as would be reasonable to allow for its performance, or, indeed, within any period which would not preclude all reasonable expectation that the promise might be kept. . . . And the same principle applies to a case where the master promises to the servant to discharge an incompetent fellow servant, but fails to do so, and the foreman is thereby injured,"—and which has been frequently approved and applied by this court. In the case of Breckinridge Co. v. Hicks, 94 Ky., 362 (15 R., 143) 22 S. W., 554, 42 Am.

St. Rep., 361, a miner called the attention of the mining boss to loose rocks in the roof of the room where he was working, and the boss promised to send in timber and prop the roof. Two days after this promise the roof fell upon the miner, crippling him for life. In that case the court, speaking through Judge Pryor, said: "It will be assumed in this case that both the employer and employe knew of the danger, or from the facts had the right to apprehend it. Then the question arises, did Hicks waive the danger, and voluntarily assume to work, without look-ing to the employe for these props? If Hicks, knowing the danger, continued in his work without complaint, or rather without requiring his superior to provide these props, then he can not recover. If, however, the superior is notified of the danger, and of the necessity for these props, and promises to furnish them within a reasonable time, then the workman may continue his work, and will not be adjudged to have waived the right of exacting this duty of his superior by remaining a reasonable time in the service. . . . And there seems to us to be no valid reason for determining that such conduct is a waiver of the right of recovery, when, if the superior had complied with his promise, no injury would have been inflicted."

In Brown v. Levy (108 Ky., 163) (21 R., 1724) (55 S. W., 1079) the plaintiff alleged "that he was injured by reason of the incompetency of a fellow servant, and that he had notified his employer that said fellow servant was incom-petent and negligent, and they knew when they employed him that he was careless and negligent, and had prom-ised that they would in a short time remove him, and em-ploy a competent assistant." That case came up on de-murrer, and it was held, in substance, that the servant could not be held to assume the risk of an injury by the

negligence of a fellow servant after complaining thereof, and after promise to remove such servant. And in Bell & Coggeshall Co. v. Applegate (23 R., 470) (62 S. W., 1124) the principle of law which the appellant seeks to have applied was considered, and the rule stated in these words: "The rule with reference to machinery and appliances to be used by the employe in the discharge of his duties is that, where the master is notified by the servant of a defect in the machinery furnished for the servant's use, and promises to remedy the defect, the servant, by continuing in the use of such machinery for a reasonable time after the promise to repair, does not assume the risk; and if, by reason of the defect complained of, he is injured, the master is liable." But there is no intimation by either Shearman & Redfield or any of the cases referred to, nor do we understand the law to be, that a servant is exonerated from the duty of exercising ordinary care for his own safety from the use of defective appliances, of which he had knowledge, because of a promise of the master to repair such defects. The law imposes upon the master the duty to use ordinary care to provide suitable machinery for the use of his servant; but the law is well settled that if the employe has knowledge that the machinery with which he is to work is in a defective condition, and he continues to use it without complaint, he assumes the risk therefrom, and waives the right to hold the master responsible in case of injury. But if, on the other hand, he does make complaint to the master, and the master promises that he will have the machine put in order within a reasonable time, then the master can not rely upon the knowledge on the part of the servant of the defective condition of the machine, so as to relieve himself from responsibility. But this prin-

ciple of law does not go to the extent of holding the master liable for injuries which result from the negligence of the servant, who is at all times bound to exercise reasonable care for his own safety, and not from the defect in the machinery. The jury were not told that plaintiff could not recover if he was aware of the defective condition of the machinery, and there was consequently no occasion to tell them that, if he notified appellee of its defective condition, and they promised to repair it, they had waived their right to rely upon appellant's knowledge of the defective condition of the machinery to avoid recovery. We are of opinion that the instruction quoted supra submitted to the jury the real issues raised by the pleadings; that is, whether appellant's injury was the result of the defective condition of the joiner or negligence on the part of appellant.

Judgment affirmed.