[No. 4461.   Decided April 10, 1903.]

CARL JOHNSON, *Appellant,* v. ANDERSON AND MIDDLETON LUMBER COMPANY, *Respondent.*

MASTER AND SERVANT — UNSAFE PLACE TO WORK — PROMISE TO RE-
PAIR DEFECT — EXERCISE OF ORDINARY CARE BY SERVANT.

An employee who continues his work supported by the promise of the master to improve an unsafe place to work, and is

injured by exposing himse.f indiscreetly to imminent peril in such unsafe place, cannot justify his own negligence as induced by a reliance on such promise to repair.

SAME — CONTRIBUTORY NEGLIGENCE.

A workman engaged in operating an edger which was not provided with a moving conveyor, as is customary, but with a stationary chute which occasionally became clogged and required clearing with a stick, cannot recover for injuries received in attempting to clear the chute in the dark, without stopping the machinery, when it appears that the place was dangerous for such work even in the light because of its cramped surroundings and the proximity of revolving shafts and saws.

Appeal from Superior Court, Chehalis County.—Hon. OLIVER V. LINN, Judge. Affirmed.

*Sheeks & Hogan,* for appellant.

*J. B. Bridges,* for respondent.

PER CURIAM.—Action for damages for personal injuries. The complaint alleges that plaintiff was operating for defendant an edger, which was defective, in that it was not provided with a moving conveyor, such as is usually used with such machines; that it was provided with only a stationary chute, into which sawdust, slabs, and other refuse from the mill fell, and that the only way of freeing the chute from such obstructions was to push out such refuse with a stick, which had to be inserted between and under the revolving saws; that the edger machine was not provided with sufficient light; that the plaintiff had called that fact to the attention of the foreman several times, and that said foreman had agreed to fix the electric light, which hung back of the edger, and put it in running order; that, while attempting to clear out the chute on the morning of February 5, 1900, by reason of the darkness and want of light above the edger machine, the stick which plaintiff was using for that purpose came in contact with a revolv-

ing shaft, throwing him upon the saws, with the result that his left arm was cut off between the elbow and the shoulder. The answer was, in effect, a charge of contributory negligence. At the close of plaintiff's testimony the court sustained defendant's motion for nonsuit upon the ground of contributory negligence and that the complaint did not state a cause of action. Judgment of dismissal followed, and from such judgment this appeal is taken.

A discussion of the testimony involves, in effect, a discussion of the complaint, as the testimony followed closely the allegations of the complaint. The testimony is very brief, and fails to show any substantial defect in the construction of the edger machine. In any event, appellant, who was a saw mill man of five years' experience, and who had been operating this particular edger between three and four weeks, knew of its plan of construction when he commenced to work. According to his testimony, his principal complaint was that the electric lamp, which furnished light at the back part of the edger, where he had to operate in clearing out the chute, had been allowed to get out of repair, and that the foreman had neglected to repair it, although his attention had been called to it several times, and he had agreed and promised to so repair it. Appellant attributes his misfortune to this circumstance, and relies upon the doctrine announced by this and many other courts, that, if the master promises to amend a defect, and by such promises induces a servant to remain at service, the fact of his continuing in the employment does not, as a matter of law, exonerate the master from liability, but simply furnishes a question of fact for the consideration of the jury. Conceding, as we do, the soundness of this doctrine, the employee, even supported by a promise to repair, is still expected to act with ordinary prudence and judg-

ment.  He may not act in an indiscreet manner, exposing himself to unnecessary and imminent peril, and justify himself upon the promise to repair.  While we have held in some cases that the servant was not called upon to shut down a mill while arranging machinery, thereby causing a great loss of time to his master, that holding was in cases where the peril under the mode adopted was not imminent. But, yielding our heartiest support to the doctrine that the zeal of the servant exercised in the master's interest should not be counted against him in case of miscarriage of calculation, yet the zeal must be bounded by ordinary prudence and circumspection.  In this case the appellant testifies that the clearing of the chute in the manner in which he was compelled to clear it was a dangerous operation at the best;  that defendant was negligent by reason of the construction of the machine, which required it to be cleared in such a manner;  that it required the utmost care and caution to perform the work;  that it was much worse without a light, and that he told the foreman that it was too big a risk to work in a place like that without a light;  that it was seven o'clock on the 5th day of February, and that it was "awful dark";  that they did not begin to see daylight in the mill at that time of the year until eight o'clock, and that the lamp in front did not furnish any light at the back part of the edger, being shut off by the frame;  that it was so dark that he could not see the revolving shaft;  that by reason of the darkness he got too near the shaft, and that that was the cause of the accident.  We think, under the circumstances as stated by the appellant, that it was his plain duty to have stopped the running of the edger before attempting to clear out the chute in the dark, and that when it appears by a man's own statement that he attempted in the dark-

ness, in a cramped place, such as this was described to be, to work around and with revolving saws and shafts, there cannot be any difference of opinion in the minds of reasonable men as to whether or not he was guilty of contributory negligence. The negligence was so palpable that we think the court was justified in sustaining the motion for nonsuit.

Affirmed.