## Carl Althardt, Appellee, v. Consolidated Coal Company of St. Louis, Appellant.

1. MASTER AND SERVANT—*what essential to recover for failure to furnish safe place to work.* In order for a servant to recover against his master for failure to provide him with a reasonably safe place in which to work, or a reasonably safe appliance or instrumentality with which to work and which the master had not promised to remedy, it must be shown that the danger complained of existed, that the master had notice thereof or might have had by the exercise of ordinary care, and that the servant did not know of the danger and had not equal means of knowledge with the master.

2. MASTER AND SERVANT—*what promise to repair essential to preclude operation of doctrine of assumed risk.* In order for a servant to relieve himself of the assumption of risk by reason of such a promise it must appear not only that the master made such a promise, but that the promise was made and accepted with the view of removing a possible danger of injury to the servant by reason of the supposed defect; if it is for the purpose only of making the work less difficult to the servant, or more profitable to him, or of enabling him to do more work or better work, it will not have the effect of relieving the servant of an assumed risk.

3. MASTER AND SERVANT—*effect of promise to repair.* The purpose and legal effect of a promise by an employer to repair defective machinery, or to remedy or remove a dangerous condition or appliance, is to relieve the employe of the assumption of a risk that the law would otherwise cast upon him.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed April 9, 1910.

WISE & KEEFE, for appellant; GEORGE C. MASTIN, of counsel.

R. GUY KNEEDLER, D. H. MUDGE and C. H. BURTON, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

Consolidated Coal Company of St. Louis appeals from a judgment obtained against it by Carl Althardt in the sum of $1,200 in the Circuit Court of Madison

county for personal injuries alleged to have been caused by the negligence of the appellant.

The cause went to the jury on the second count of the declaration which is in case, the other counts having been withdrawn. Said count charges in substance that the defendant was operating a coal mine called No. 17 at Collinsville, Illinois, and that plaintiff was therein employed as a driver; that it was the duty of the defendant to furnish him a reasonably safe mule to drive in said mine; that the defendant did not regard that duty, but furnished him with a mule called "Paddy," which was dangerous and unfit for use and would kick and bite and injure men in the mine, especially its driver; that he notified the defendant that the mule was dangerous and would kick, and requested the defendant to give him other employment in said mine and to relieve him from driving said mule, and that on December 30, 1907, the defendant promised him another job and ordered him to continue driving said mule during said day; that relying upon said promise and acting on said orders, he continued to drive said mule said day; that while driving said mule in said mine on said day and exercising ordinary care for his own safety, the plaintiff was kicked by said mule on the right jaw, crushing the bone and permanently injuring the plaintiff so that he suffered great pain and lost his teeth in the lower jaw bone and portions of his jaw bone, to his damage of $5,000.

General issue was pleaded and at close of the evidence appellant's motion for peremptory instructions were denied by the court, and also its motion for a new trial.

Of the many errors assigned it will only be necessary to consider two, the denying of appellant's peremptory instructions and the overruling of the defendant's motion for a new trial, in the view we have taken of the case. It is well proven in this case that the mule in question was dangerous and unsafe for the purpose for which he was used by reason of his disposition to kick. The appellee and appellant both knew this, and

according to the evidence of the appellee he notified the appellant that this mule was dangerous by reason of his disposition to kick as averred in the second count of the declaration. Under ordinary circumstances, there could not be any recovery by the appellee, as it would be a case of the assumption of the risk by appellee by continuing to drive the mule after such knowledge. In order for a servant to recover against his employer for failure to provide the servant with a reasonably safe place in which to work, or a reasonably safe appliance or instrumentality with which to work and which the master had not promised to remedy, it must be shown that the danger complained of existed, that the master had notice thereof or might have had by the exercise of ordinary care, and that the employe did not know of the danger and had not equal means of knowledge with the master. L. E. and W. R. Co. v. Wilson, 189 Ill. 89; Swift Co. v. Gaylord, 229 Ill. p. 338. This was practically conceded by appellee in dismissing the first count of the declaration after the evidence was introduced by the plaintiff, which count was simply based on the failure of the defendant to furnish a reasonably safe mule to plaintiff to drive in said mine. But the right of recovery by appellee under the second count is based upon the alleged promise of the appellant that it would remedy or remove the danger to appellee from driving this dangerous mule by giving him another job at the face of the coal, if he would drive the mule one more day. And upon the further allegation that by said promise appellee relying thereon was induced to continue to drive said mule for another day and was kicked and injured on that day while driving that mule as ordered by appellant.

The appellant based its right to a peremptory instruction upon the ground that the undisputed evidence in this record shows that the appellee knew that the mule was dangerous, and that appellant did not promise the appellee that if he would drive the mule one more day it would give him another job in the mine,

and that appellee was not relying upon such a promise when he was injured; and that if any promise was made to appellee it was not made or accepted to obviate any supposed danger, but for the purpose solely of giving and accepting a more paying job.

The purpose and legal effect of a promise by an employer to repair defective machinery, or to remedy or remove a dangerous condition or appliance, is to relieve the employe of the assumption of a risk that the law would otherwise cast upon the employe.

In order, however, for the servant to relieve himself of the assumption of the risk by reason of such a promise it must appear not only that the master made such a promise, but that the promise was made and accepted with the view of removing a possible danger of injury to the employe by reason of the supposed defect. If it is for the purpose only of making the work less difficult to the employe, or more profitable to him, or of enabling him to do more work or better work, it will not have the effect of relieving the employe of an assumed risk. Tesmer v. Boehm, 58 Ill. App. 609; Chic. B. & I. Co. v. Hayes, 91 Ill. App. 271; 1 Labatt's Master and Servant, secs. 418, 419, 421; Bodwell v. Nashua Mfg. Co., 70 N. H. 390.

The complaint of the employe to the employer in such case must be to the effect that the defect renders the work more dangerous, and accompanied with the statement, express or implied, that he cannot continue the work longer unless the danger is removed. Then if a promise is made to the employe that the danger will be removed in a reasonable time if he will go on with the defective appliance, it must be taken as understood between them that the continued use in the then condition of the appliance will be at the risk of the master and not of the employe or servant, as it is for the master's convenience and at his request. Assuming that the promise of the master to remove the employe to a safer job will have the same effect in law as a promise to repair the defect or remove it and sub-

stitute another, the appellee's evidence is not sufficient for a recovery by him in this case on that ground. This doctrine seems to have been held both ways by our Appellate Courts, and not passed on by our Supreme Court. U. S. S. Refinery v. Welcher, 123 Ill. App. 379; I. C. R. R. Co. v. Weiland, 67 Ill. App. 332 an 1 179 Ill. 609. However, it is not necessary here to pass upon that question as the evidence in this record fails to prove the promise alleged, by the greater weight of the evidence, and absolutely fails to prove that the plaintiff exacted such promise for the purpose of avoiding danger, but does prove clearly that if exacted at all it was for the purpose simply of obtaining a more lucrative employment.

The substance of plaintiff's claim is that this promise was made by appellant on Monday, December 30, 1907. He, himself, testifies in substance as follows: "I told Mr. Grieve about this mule on Saturday, December 28, 1907 (that he was a dangerous mule). He said I wasn't pulling coal enough for him. I said if I am not, get another driver, because I was scared of the mule anyhow, and he said finish the day out. I finished the day out and Grieve (mine manager) told me to come back Monday, and he would give me a chance Monday. I came back, saw Grieve, Monday, December 30, 1907 (the day appellee was injured). I asked him if I could go with my brother and he said I should go down and he would see. My brother was running a machine in this mine. I went below and asked him if he was going to let me go in (with his brother) and he said, No. I told him (mine manager) I was going away and he told me to get a committee, Jack Larimore and Herb Strain. The committee is called to settle disputes between the operators and the miners; I saw the committee; they had a talk with Grieve; I was standing alongside but didn't hear what they said; Grieve told me to drive that mule today and he would give me a chance, and the committee told me the same thing. I stayed because I thought I was going to get a

chance." On cross-examination he said he kept on driving the mule under the promise of Mr. Grieve to give him a place before he went down there, that he gave him this promise of a better job before he got Paddy, the kicking mule, and that this promise was made before he, appellee, ever saw "Paddy," when he was driving other mules; that a better job meant more money and that his desire was to get a better job; that he didn't tell Grieve to get another mule; that he wanted to quit being a driver and wanted to be a miner; that it took him two years working at the face before he could get a certificate of competency and that was the reason he spoke to Grieve about this job, and "Grieve said it would be all right and he would see what he could do for me Monday."

He then says that the committee and Mr. Grieve met and had a talk; that Mr. Grieve said he could drive or quit, and the committee told him he had better drive the day out and he would stand a better chance to get another job, and that that was all he said to Grieve about it. He then says he told Mr. Grieve three or four times he was afraid of the mule, and that he told him that Monday that he was afraid the mule would kick him. It thus appears from his examination that his promise of a job was before the day of his injury, and that on the day of his injury Grieve told him to drive the mule or quit, and that it was the committee that told him that he had better drive that day as he would stand a better chance for the other job. It also appears that he was wanting or insisting on quitting driving, not because it was dangerous, but because the other job was worth more money to him. The committee, Larimore and Mr. Strain, were both witnesses for the plaintiff, and they testified that they as committee took up the matter between plaintiff and Grieve; that plaintiff said he wanted to go to the face and that Grieve said he wanted the plaintiff to finish driving, and then he would try to get him a place and that nothing was said by them to the committee about

the mule, Paddy; that they, the committee, decided that he should go on driving, and told plaintiff to go ahead and drive the mule and do as the mine manager wanted him to do, and he could get the job easier, and that they would use their influence to get him a job; that they also saw the mine manager and he said he would do the best he could for plaintiff, but did not say when he could or would give him another job.

Grieve testified that no promise to plaintiff was made at all on the day he was injured, and denies that he ever made any such promise. Plaintiff having located this promise at a time before he ever drove Paddy it is clear that the evidence does not sustain the main proposition of plaintiff's declaration that the defendant promised to remove the danger complained of by giving him another job.

If this was all there was averred in that count, a verdict should have been directed for the defendant. As there is the further allegation in the declaration in said count that the plaintiff was ordered to drive the mule after the defendant was notified that the mule was dangerous, and that appellee was afraid to drive it, and as there is some evidence tending to support this proof, the cause ought to be remanded for further proceedings. The case was not tried apparently upon this allegation, and the jury were not instructed upon this theory of the case, and it is not urged or defended here on that theory. We are therefore not disposed to further comment upon this branch of the case.

For the reasons above stated the judgment of the lower court will be reversed and the cause remanded for further proceedings.

*Reversed and remanded.*