TOGO GIN COMPANY *v.* HITE.

4-3729

Opinion delivered February 25, 1935.

*Walter N. Killough,* for appellant.

*Giles Dearing,* for appellee.

BUTLER, J. The appeal prosecuted in this case involves the validity of the verdict and judgment for damages for personal injuries sustained by appellee while he was engaged in unchoking a gin stand. The appellant, Togo Gin Company, is engaged in ginning cotton, and the appellee was its superintendent and had been such for about two years before his injury, which occurred on September 27, 1933, and operated the ginnery according to his own judgment without interference by the company. Appellee had authority to employ and discharge the laborers at the gin. He also had general authority to purchase whatever was necessary to the operation of the gin. The power to run the gin was furnished by a Buckeye oil engine, which was purchased by the gin company when the gin was erected in 1928. This engine had been in use about a year before the gin company acquired it, and had been through a fire which damaged and destroyed some of its accessories. It was worked over by the manufacturer and sold to the gin company, and has been used in the operation of the ginnery since its installation. The machinery is so arranged that the power can be withdrawn from the gin stands without stopping the engine or removing the drive belts, which is done in the following way: on the drive shaft is a large wheel connected with the gin stands by a large belt. An instrument, called by the witnesses a ''clutch'' operated by lever, is so arranged that when it makes contact or engages with an appliance at the wheel the same is put in motion, thus conveying the power to the gin stands and causing the saws to revolve. By the use of the lever this clutch can be disengaged, and when this is done the machinery is ''out of gear,'' thus removing the power from the gin stands which cease to operate.

On the day of the accident a bale of wet cotton was being ginned and the gin stand became choked; that is to say, lint cotton became impacted between the ribs of the stand through which the gin saws extended which interfered with their operation. Appellee undertook to unchoke the gin stand by raising the breast of the gin,

thus removing the saws from between the ribs and taking the load from them. From the gin stand he went into the engine room which was only a few feet away, and operated the lever which disengaged the clutch. He then went back to the gin stand and with his fingers began to remove the cotton which had clogged the ribs. While thus engaged the gin saws moved, badly cutting his fingers and forearm, and resulting in a severe and permanent injury.

The appellee contends that, while he was at work unchoking the gin, the clutch, because of certain defects therein, became re-engaged throwing the machinery in gear and starting the gin saws to operate by which his hand was caught and mangled. With respect to the alleged defective condition of the clutch, after the close of the cotton season of 1933-34, the evidence is in sharp conflict. A number of witnesses for the appellee testified to the effect that it was in a worn and defective condition, while others testified that it was not. There is no dispute in the evidence, however, that in the summer of 1933 the entire engine and its parts were gone over by an expert mechanic under the supervision of the appellee, and that at that time there were no defects in the clutch. Appellee testified that the machinery was not in operation until that September, and that the clutch became defective between the date of the beginning of the operation of the gin and the 27th of September. Much has been said in argument of counsel regarding the causes for the alleged defective condition of the clutch, but this is unimportant.

The appellee stated that the first time he became aware that the clutch was not properly functioning was about two weeks before his injury when he observed that when the gins were loaded the clutch would slip and not hold the machinery. He reported this condition to Mr. Fitzgerald Saturday night before his injury on Wednesday—told him the clutch was slipping and would not hold; that it needed new parts. Appellee stated that Mr. Fitzgerald replied "to go ahead" and that he (Mr. Fitzgerald) would have it fixed. Mr. Fitzgerald was one of the officers of the gin company, and would visit the

gin two or three times a week. He had never run a gin and was not a mechanic.

Appellee and a number of other experienced gin men testified that in all of their experience they had never known a clutch, after it had been disengaged so as to throw the machinery out of gear, to ever re-engage itself so as to again start the machinery in motion. The appellee, however, testified that, although he had never known such a thing to happen, he concluded that the machinery could only have been made to move by the re-engagement of the clutch.

After the accident the appellee's brother took charge of the operation of the gin, and operated it through the remainder of the ginning season without any notice being given to him of any defect in the clutch, and without any repairs to it being made. No trouble was experienced or any defect observable during the operations of the ginnery after the accident. Several witnesses testified that after appellee was injured he said to them, or in their presence, in effect, that the injury was the result of his carelessness because he began to unchoke the gin while the saws were still in motion. This testimony was not disputed by the appellee except by his saying that he did not remember ever having made any such statements, and that some accused him of putting his hand on the ribs before the gin had stopped and that he made no reply.

We accept as true the testimony of the appellee given at the trial and give to it its greatest probative value. However, when this is done, we are of the opinion that, if the evidence is sufficient to establish negligence on the part of the appellant in permitting the clutch to become defective and in failing to repair it after notice, the appellee is not entitled to recover in this action. He knew better than any one else the condition of the clutch, and the results which would probably flow from its defective condition and would ordinarily assume its hazard. Mr. Fitzgerald relied on appellee for the proper upkeep and operation of the gin, and had no knowledge of its condition except such as was communicated to him by the appellee. He had no information that the defect in the

clutch might result in increasing danger to those employed in the gin or to the appellee. He was merely told that the clutch slipped when the machinery was loaded. The effect of this information was to convey to Fitzgerald the idea that the gin could not be efficiently run with the defective clutch, and not that any increased danger to the appellee arose from that condition.

The assumption of risk by the appellee is sought to be relieved because of the notice to Fitzgerald and his promise to repair the defective clutch. The general rule is that the purpose and effect of a promise to repair defective machinery, or to remedy a dangerous condition, is to relieve the employee of the assumption of risk which would otherwise be cast upon him. In order to relieve the employee of assumption of risk, however, it must appear that he not only made complaint to the master and that promise of repair was given, but that this was done with the view of removing possible danger of injury to the employee on account of the supposed defect, which he was not willing to incur, and that he was induced to remain in employment by the promise of the master to remedy such defect, and that without such promise he would not have done so. If the promise to repair is made only for the purpose of making the work less difficult to the employee, or to enable him to do more or better work, it will not have the effect of relieving him of the assumption of risk. *Chicago Mill & Lbr. Co.* v. *Wells,* 101 Ark. 537, 142 S. W. 1131; *International & G. N. R. Co.* v. *Turner,* 3 Tex. Civ. App. 487, 23 S. W. 146; *Gowen* v. *Harley* (1893) 6 C. C. A. 190, 12 U. S. App. 574, 56 Fed. 973; *Equitable Powder Mfg. Co.* v. *Green,* 109 Ill. App. 403; *Am. Tobacco Co.* v. *Adams,* 137 Ky. 414, 125 S. W. 1067; *Gulf, C. & S. F. R. Co.* v. *Garren,* 96 Fed. 605, 97 Am. St. Rep. 939, 74 S. W. 897; *Althardt* v. *Consolidated Coal Co.,* 155 Ill. App. 364.

Here the complaint was not to the effect that the defect in the clutch rendered the work more dangerous, and was not accompanied by a statement, express or implied, that appellee would no longer continue in the work unless the danger was removed. As we have seen, there was nothing in the statement regarding the defect

in the clutch or the results which it might occasion which would have induced Fitzgerald to believe anything more than that the work of the gin could not be effectively accomplished with the clutch in a condition causing it to slip when the machinery was loaded. This therefore did not relieve the appellee of the assumption of risk occasioned by the defective appliance.

Notwithstanding the promise made by Fitzgerald to repair the clutch, the duty still remained with the appellee to use due caution in the operation of the machinery, taking into consideration the increased danger arising from the defective condition of such machinery or any of its parts. The evidence is to the effect that there were two ways to stop the machinery when gins were being unchoked—one was to disengage the clutch by the use of a lever and the other was to stop the engine. If the engine was stopped, there could have been no danger from the clutch, however defective it might have been. It was shown that the latter method could have been followed with but little trouble. The engine could be stopped immediately by "turning off the throttle" and again put in operation with no difficulty. The witnesses testified that the method adopted by appellee in unchoking the gin stand was that ordinarily pursued by ordinarily careful and prudent men, but this testimony related to machinery which had no defects and where the clutch was not worn or out of repair, as claimed by the appellee. The evidence was to the effect that it was perfectly safe, in so far as the movement of the machinery was concerned, under all conditions when the engine was not in operation. If there was any danger attendant upon the appellee because of the condition of the clutch, he should have known, and did know, that danger, and with this knowledge chose the more dangerous of the two methods of stopping the machinery. Appellee's injury therefore was the result of his failure to use the care commensurate with the operation of the machinery in its defective condition, which therefore bars his recovery. *Freeman* v. *Savannah Elec. Co.*, 131 Ga. 449, 60 S. E. 1042; *Reiser* v. *So. Planing, etc., Co.*, 114 Ky. 1, 69 S. W. 1085; *Johnson* v. *Anderson,* 31 Wash. 554, 72

Pac. 107; *Schlitz* v. *Pabst Brewing. Co.*, 57 Minn. 303, 59 N. W. 188.

From the views expressed, it follows that the judgment of the trial court must be reversed, and the cause dismissed. It is so ordered.