Missouri Pacific Railroad Company r. Bryant.

4-5420                                     128 S. W. 2d 268

Opinion delivered May 1, 1939.

*Thomas B. Pryor, H. L. Ponder* and *H. L. Ponder, Jr.,* for appellant.

*Franz E. Swaty, L. A. Hardin, J. B. Dodds* and *W. R. Donham,* for appellee.

SMITH, J.   Appellee Bryant was employed on September 2, 1937, by the trustee operating the Missouri Pacific Railroad at Rio Vista, White county, on the Bald Knob-Memphis branch of the railroad company.   The Fisher Body Company loaded cars with logs at this point to be shipped to Memphis, Tennessee, and it was the duty of appellee to inspect those cars and make the slight repairs found necessary which could be made at that place. He had been so employed for two years prior to the date above-mentioned, but had been employed by the railroad company in various capacities for a period of nine years, during a portion of which time he was employed as foreman of the shops and yards of the railroad company at

Wynne, Arkansas. The Fisher Body Company furnished two men to assist appellee in this work, one of these being Jap Simmons, a colored man, who was a blacksmith, but appellee was in charge of the work and there was no one present in authority over him. He discharged his duties in making repairs to cars according to his own judgment.

On the date above mentioned appellee was engaged in rebrassing a flat car loaded with logs and billed to Memphis, Tennessee. To aid in this work appellee had been furnished with an aluminum jack, and when rebrassing of cars was required the jack was placed on the end of a railroad tie and under the journal box of the car, and by the use of a lever three feet in length the jack raised the car to the height required. The mechanism of the jack was inclosed in a metal casing except three cog wheels, which were on the outside of the casing.

Appellee alleged and offered testimony to the effect that while engaged in rebrassing the car in the manner stated, the jack failed to hold and slipped because of its worn and defective condition, causing the lever to fly back and strike appellee on one of his testicles, inflicting a painful and, as he says, a permanent injury, and from a judgment awarding damages to compensate that injury is this appeal.

Appellee was corroborated in his statement that he was injured in this manner by Simmons, the blacksmith, who was engaged in assisting appellee. There was offered in evidence the signed statement of Simmons and two signed statements by appellee, the effect of which was to admit that appellee's injury was not caused by any defect in the jack, but by its improper use, and one Lambert, the bookkeeper of the Fisher Body Company at Rio Vista, testified that appellee had made such an admission to him. However, appellee and Simmons repudiated these statements and explained them away to the satisfaction of the jury. This issue of fact having been submitted to and decided by the jury, we must assume that the jack was in fact defective, and that this defect caused appellee's injury.

Appellee's immediate superior was one R. Smith, the master mechanic of the railroad company, whose office was in Memphis, Tenn., and daily reports were made to Smith by appellee. Appellee's testimony in regard to the report he made on the jack is as follows: ''The master mechanic was Mr. R. Smith, who lives in Memphis, Tenn. In the letter I wrote him I told him the jack was getting worn, but I did not tell him it was defective. I did not hear any more from the letter. I called Mr. Smith over the phone about two or three days before I was injured, and I think he told me he was trying to locate a jack. I was afraid the jack might become worn to the point where it would not lift and the work would pile up on me. He told me to use the jack until he got another. I didn't know the jack was dangerous, but thought it might refuse to lift. I was taking the chance on his instructions.'' Smith denied this testimony, but in view of the jury's verdict we must accept it as true.

It is insisted that this promise on the part of the master mechanic to replace the worn jack with another operated to relieve appellee from the assumption of the risk of injury arising out of the defective condition of the jack. It may be said, in passing, that, while this suit was brought under and is governed by the Federal Employers' Liability Act, the defense of assumption of risk remains and is available under proper conditions.

The statement of the rule in the opinion in the case of *Togo Gin Co.* v. *Hite,* 190 Ark. 454, 79 S. W. 2d 262, relating to promises to repair is applicable here. In that opinion the late Justice BUTLER, speaking for the court, said: ''The assumption of risk by the appellee is sought to be relieved because of the notice to Fitzgerald and his promise to repair the defective clutch. The general rule is that the purpose and effect of a promise to repair defective machinery, or to remedy a dangerous condition, is to relieve the employee of the assumption of risk which would otherwise be cast upon him. In order to relieve the employee of assumption of risk, however, it must appear that he not only made complaint to the master and that promise of repair was given, but that

this was done with the view of removing possible danger of injury to the employee on account of the supposed defect, which he was not willing to incur, and that he was induced to remain in employment by the promise of the master to remedy such defect, and that without such promise he would not have done so. If the promise to repair is made only for the purpose of making the work less difficult to the employee, or to enable him to do more or better work, it will not have the effect of relieving him of the assumption of risk. (Citing cases.)''

It appears, from appellee's statement as to the contents of the letter which he wrote Smith, the master mechanic, and as to his conversation with him, that he did not advise that the tool was unsafe or that there was danger of injury in using it. It was apprehended only that the jack would cease to lift the cars and that work would pile up. There was no request to repair the jack, nor was there any promise that it would be repaired, but if the promise to replace the old jack with a new one should be treated as in the nature of a promise to repair, it was made only for the purpose of making the work less difficult to the employee or to enable him to do more and better work, and, as said by Judge BUTLER, such a promise ''will not have the effect of relieving him (the employee to whom the promise was made) of the assumption of risk.''

It is argued that the jack was in fact a defective tool, and that the defect was not open to observation, and had not been discovered by its use, as it had never slipped before, but that inasmuch as the master mechanic had been advised that the tool was old and worn, an inspection of the jack should have been made, and that the master was negligent in failing to inspect and repair the jack or to furnish another. We do not think so under the undisputed testimony in this case. It will be remembered that appellee had no immediate superior on the job. He was his own boss. It was he who reported the matter in the use of the jack, and he only had the opportunity to observe its condition. The jack was a heavy tool used in lifting much heavier objects. It had been in

daily use by appellee for two years, and appellee was, and was known to be, a skilled mechanic, thoroughly familiar with the use of the jack. He did not intimate to the master mechanic that the jack had become unsafe or that danger attended its continued use. The master mechanic had no information about the jack except that communicated to him by appellee, and that information was that another jack would better enable appellee to discharge his duty without allowing the work to pile up on him.

We conclude, therefore, as a matter of law, that the master did nothing which relieved appellee of the assumption of the risk of danger from the use of the jack, and there can, therefore, be no recovery of damages in this case.

The judgment must, therefore, be reversed, and as the cause appears to have been fully developed, it will be dismissed.