### Smith v. Houston, Stanwood & Gamble Company.

(Decided February 20, 1914.)

Appeal from Kenton Circuit Court
(Criminal, Chancery, Law & Equity Division).

1. Master and Servant—Negligence—Ordinary Care—Question for Jury.—A servant who is injured by reason of the negligence of the master in failing to furnish him a reasonably safe appliance to work with, where he has continued in the service upon the promise of the master to remove the trouble, may recover for his injury unless he failed to use ordinary care for his own safety and this ordinarily is a question for the jury.

2. Master and Servant—Ordinary Care—Question for Jury.—A servant who was running a piece of lumber through a saw on being called as he supposed by the foreman, looked around to see what was wanted, and when he did this, by reason of the saw not being in proper condition, his hand was jerked into the saw. Held: that it is a question for the jury whether his injury was by reason of his own want of ordinary care.

MYERS & HOWARD for appellant.

S. D| ROUSE and WAITE & SCHINDEL for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

George W. Smith, while in the service of the Houston, Stanwood & Gamble Company operating a saw, received an injury to his right hand to recover for which he brought this suit against the company. At the conclusion of the evidence for him on the trial the circuit court instructed the jury peremptorily to find a verdict for the defendant; the plaintiff's petition having been dismissed, he appeals.

The facts shown in the record are briefly these: Smith was operating a small circular rip saw. The saw was in an old frame building; the shafting conveying the power to the saw was attached to the rafters of the building. This shafting owing either to the building being old or the rafters being too light to hold the shafting steady, did not run true; the saw protruded through a narrow opening in the table an inch or so; the shafting to which the saw was attached was also wabbly so as to make the saw not run true. The gauge which held the timber was closer to the saw at the back than in front. By reason of these things when wood was fed into the saw, it operated unevenly in point of speed and a greater force was required to make the timber pass along the saw. The saw would sometimes grab the timber and throw it out. Smith knew of this dangerous condition of the saw and a month before his injury he applied to Bailey, the foreman, to place a screen over the saw to protect the operator from coming in contact with it. Bailey said he would see the superintendent. A few days later he reported to Smith that the superintendent said he intended to replace the old saw with a new and modern one and, therefore, did not want the screen built. Smith continued to work, relying on this promise. In his testimony as to how the injury occurred, he said:

"I was pushing that piece of lumber through, and in using small lumber it is more dangerous than heavy lumber, because you have to keep your hand on it, and your eye too. I was pushing it through, and I pushed my hand about that close (indicating) and the saw if you place your hand over here, and don't get hold of this end of the board until you get around, and then you go around and pull it through. It will come out. You push it as far as you can and then get around on the other

side, and take hold of it to pull out. As I put this hand down that way to hold it, some one hollered at the open window, and I thought it was Mr. Bailey, or somebody he had sent for me, and I took this hand off. As I turned and not thinking, the saw jerked the board out, and I jerked my hand under the saw. When it jerked the board from under my hand, of course that would excite any man, and I just threw my hand in the way. In pushing the lumber through this way, it makes no difference what kind it is; you have to push hard enough to push it through."

On the next day he was recalled and testified as follows: "I took my left hand off and the saw caught underneath the board. The board flew out of the saw and that threw my hand in the saw. The sudden jerking of the board out, jerked my hand in the saw." Cross-examined: "I had my left hand back of the saw, somebody called me and I raised my left hand. When I raised my left hand the saw raised the timber where it goes out. My right hand was in front of the saw . The instant somebody hollered at me I took my hand off the board. The board jerked from under my hand and it threw my hand under in the saw. My taking my left hand off and turning lightened the right hand on the board and the saw hung in it and jerked my right hand on the saw. My right hand was in front of the saw when the board jerked from under my hand. My hand went in the saw; was how it happened."

The case is here on simply the evidence for the plaintiff. There was abundant evidence showing that the saw was in a defective and dangerous condition, and there was sufficient evidence showing that the servant had complained of the saw, another man having been previously injured there, and that the master had promised to repair the trouble. The time which had elapsed after this promise was made was short, and it cannot be said that as a matter of law an unreasonable time had elapsed. The ground upon which the circuit court appears to have based his ruling is that the plaintiff's own evidence showed that he jerked his hand under the saw or threw it in the way, or that he was as a matter of law, negligent in looking around when operating the saw as he knew the danger. Our rule is that if there is any evidence the question is for the jury and although the facts are undisputed the question is for the jury if the

inference to be drawn from the facts is not so certain that intelligent men may not reasonably differ. A man cannot know for what purpose he is called at his back and it is a question for the jury whether the plaintiff was negligent in looking away for an instant when he was called. If the saw had been in the proper condition there would have been no danger at all in this, and what the plaintiff should have done under the circumstances is a question upon which intelligent men may reasonably differ. If when he looked around he pushed his right hand in the saw, and this was not due to the saw throwing the timber out by reason of the defective and dangerous condition of the machinery, of if he failed to exercise such care for his own safety as may be usually expected of a man of ordinary prudence under such circumstances he cannot recover. But if the machinery was in a defective and dangerous condition and he had made complaint of it and the promise had been made to him as above stated, and the lumber was thrown out of the saw by reason of the defective and dangerous condition of the machinery and this caused the plaintiff's hand to get into the saw and be injured, he may recover, unless he failed to exercise such care for his own safety as may be usually expected of a man of ordinary prudence under the circumtances, and but for such failure on his part would not have been injured. These questions should be submitted to the jury by appropriate instructions.

Taking the plaintiff's testimony as a whole and all the circumstances shown by the evidence, a jury would be warranted in concluding that what he meant was that the saw teeth hung in the timber on the far side from him, thus throwing the timber out of the saw when he lifted his left hand off it, and that as he was pushing the timber with his right hand; when this occurred his right hand came into the saw. A servant is not exonerated from the duty of exercising ordinary care for his own safety in the use of defective machinery of which he has knowledge, because of a promise of the master to repair such defects. (Reiser v. So. Planing Mill and Lumber Co., 114 Ky., 1.) But this rule is not to be applied so as to make every momentary action of the servant as a matter of law, contributory negligence. Usually contributory negligence is a question for the jury. Servants must obey orders, and when the plaintiff thought he was called

by the foreman it was his duty to obey, and at the same time to exercise ordinary care for his own safety. But whether his mere looking around for an instant to see what was wanted was a failure to exercise ordinary care is a question for the jury; for we cannot say that reasonable men might not differ as to the conclusion to be drawn from this. (Dolfinger v. Fishback, 12 Bush, 474.)

No man is always at his best. Momentary inadvertence may reasonably be expected from any one at times. If the plaintiff's proof is true the machinery was in a defective and dangerous condition and this defective and dangerous condition of the machinery was the primary cause of the plaintiff's injury. Under this proof the primary trouble was the negligence of the master in furnishing unsafe machinery for the use of the servant and his inducing the servant to continue work with it. Under such circumstances the master should not be relieved from liability unless the servant failed to use ordinary care and but for this would not have been injured and in the determination of this question all the circumstances surrounding the servant should be taken into consideration.

Judgment reversed and cause remanded for a new trial.