JOHN HARTIGAN v. DEERFIELD LUMBER COMPANY.

January Term, 1911.

Present:   ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 9, 1911.

*Master and Servant—Injuries to Servant—Sufficiency of Evidence —Contributory Negligence—Servant's Knowledge of Danger —Assumpsit of Risk—Reliance on Assurance of Foreman.*

It is the duty of a servant to exercise the care of a prudent man in the circumstances to prevent tripping over lumber accumulating near the place where he works.

In a servant's action for injuries by stumbling over boards and catching his hands between the revolving feed rolls of a planer, evidence *held* to show, as matter of law, that plaintiff was guilty of contributory negligence in not seeing and avoiding the boards.

A master is not liable for injuries to his servant resulting from defects in his working place, which he could have seen and avoided by the exercise of due care.

Where a servant knew that boards were being piled near a planer that
he was operating, he was not excused from exercising due care to pre-
vent stumbling over such boards by the assurance of his foreman that
the latter would take care of them.

CASE for negligence. Plea, the general issue. Trial by
jury at the April Term, 1910, Windham County, *Miles*, J.,
presiding. Verdict and judgment for the plaintiff. The de-
fendant excepted. The opinion states the case.

*Clarke C. Fitts* and *Hermon E. Eddy*, for the defendant.

*Herbert G. Barber*, and *Frank E. Barber* for the plaintiff.

WATSON, J. At the close of the evidence the defendant
moved for a verdict on different grounds stated, among which
were, that upon the whole evidence the plaintiff cannot recover,
and that from the evidence he was guilty of contributing negli-
gence, in that with the situation plainly before him he stumbled
over a board or piece of lumber and fell against the machine,—
the stumbling or falling being an act of negligence which due
care would have prevented. To the denial of the motion an
exception was saved. Treating the defendant's negligence
shown by the evidence as a proximate cause of the plaintiff's
injury as he claims, we pass to the consideration of the question
of negligence by him contributing thereto. The facts herein-
after stated either appeared on the trial, or are in accordance
with the evidence viewed in its most favorable light to the
plaintiff.

At the time of his injury, September 11, 1907, at 7:30 A. M.,
the plaintiff, a man of mature years, as an employee of the de-
fendant, was operating a planing machine in the defendant's
mill in Wilmington, this State. He had then been in the de-
fendant's employ about eight months, taking lumber away
from the planer in question between two and three months at
first, and the rest of the time running the machine. The ma-
chine was located in the southeast corner of the mill, its front
end toward the north. Near that end were feed rolls between
which lumber was fed to the planer, and by which it was carried

on between the cylinders and the knives some three feet or more further back. The position of the operator was in front of the machine and facing the feedrolls. Three levers were used in connection with this machine: a big lever four or five feet at the right and back of the operator's position, called the "shipper" or "shifter", used for the purpose of starting or stopping the entire machine; one at the left of the machine, used to set the bed for planing lumber to the desired thickness; and one also at the left, used to start or stop the feed rolls by shifting the belt from the loose pulley to the tight pulley, or in the converse manner, as might be required. By some of the witnesses this last named lever was called the "feed lever", and for convenience we hereinafter refer to it by that name. The alleged negligence of the defendant upon which the plaintiff relies as the proximate cause of his injury pertains particularly to this lever.

The resaw was northwest of the planer: from fifteen to twenty feet further north, and its table extending southerly to within three or four feet of the planer. Usually the boards to be run through this planer came from the resaw, but sometimes they were brought on hand-trucks from elsewhere. When the resaw was running it was necessary to have a man to take the boards off the table and put them on the floor between that machine and the planer in question, from which place they were taken by the operator of the planer to feed to that machine. Witnesses estimated that about 10,000 feet of boards a day on an average thus came from the resaw to the planer, and some said that when both machines were in operation lumber came from the resaw faster than it could be put through the planer, though generally the resaw was not in operation constantly, and the lumber from it could be run through the planer in the course of the day; while others said the lumber could be run through the planer about as fast as it came from the resaw.

A railroad ran past the mill on the east. On the morning of the accident the plaintiff was told by the foreman of the mill to commence planing dry lumber which came from the yard on a railroad car. Later, but before beginning work, the plaintiff asked the foreman, "What shall I do with the boards coming

from the resaw?" to which the latter answered, "Never mind, I will take care of them."

To be planed the dry lumber was taken from the car on a hand truck run up to about three feet of the planer, and lengthwise of it.    The mill started at six o'clock, and was run to its full and usual capacity to the time of the accident.    During that time the boards coming from the resaw were being piled on the floor between that machine and the planer, the usual place of putting them to be planed.

After the mill had been running about one and one-fourth hours the pipe in the blower of the planer became clogged with shavings, as it sometimes did, and it was necessary for the plaintiff, in the performance of his duties, to go into the basement of the mill to clean out the pipe.    In so doing he turned directly to his left, going northerly from the planer a short distance, then turning to the right around the truck and the pile of lumber on it from which he was planing, thence southerly east of the truck into the basement.    In about ten or twelve minutes he returned over the same course, and when going from the north to the place where he ordinarily stood when operating the planer he tripped his foot on a board which had slipped off the pile of lumber accumulating from the resaw, or projecting from the bottom of it, across his path about two inches above the floor, three or four feet from the planer, and "was thrown headlong," his right hand being caught between the revolving feedrolls of the machine.    After his hand was thus caught so that he could not pull it out, he shouted for help and at the same time grabbed the feed lever with his left hand and pulled it toward him, to shift the belt from the tight pulley to the loose one, and so stop the rolls.    The plaintiff's evidence tended to show that this was moving the lever in the right direction to effect that result, but that the condition of the lever and its attachments was then such that the belt was not shifted by so changing the position of the lever, and the rolls were not stopped till another employee in the mill, who came to the plaintiff's rescue, kicked off the belt by which they were driven.    The plaintiff did not know the board was thus in his path before he tripped on it. When the plaintiff was planing the lumber taken from the truck his back was towards the resaw, and to get the boards from

the truck he turned to the left.   No one saw the plaintiff when he tripped and fell against the machine.   He testified that he did not see the pile of lumber from the resaw before his injury; that when he first started his planer that morning the operator of the resaw started that, and he supposed it was running; that he knew there was usually a man at the lower end of the resaw table to take boards away, and supposed a man was there then for that purpose.   He then testified: "Q. What did you suppose he was doing with them?   A. I didn't suppose he was doing anything; that was not my business.   Q.   There was nothing he could be doing only piling them on the floor, was there?   A. Not if he was told to pile them there; all I went by was what the boss told me—he would take care of them.   Q.   Didn't you suppose the boards were coming through the resaw and being piled there?   A.   Yes, naturally.   Q.   And when the resaw was working right along it was making considerably fast?   A.   Always did.   Q.   And didn't you know that at times boards would not all be in line in that pile?   A.   They would be in line if properly piled."

The plaintiff further testified that the lumber from the resaw on that morning was not piled, but "was thrown off the table and went wherever it had a mind to"; and that while he worked for the company there was no occasion when the lumber was allowed to accumulate about the planer in the manner it did the morning of the injury.   He testified in cross examination: "Q.   You say lumber was all scattered about instead of being piled up?   A.   Yes.   Q.   Right back of you?   A.   Thrown off the table.   *   *   *.   Q.   None of it was piled up?   A.   Not that I would called piled up.   Q.   So when you went around the truck to go down into the basement the morning of the accident, you had to crawl over it?   A.   There was none on the track.   Q.   There was no lumber scattered around there you say?   A.   From the path that I came out on to the resaw.   Q.   You say it was scattered about then?   A.   Yes, it wasn't piled up.   Q.   You could see that instead of being piled up the man had thrown it down carelessly?   A.   Yes sir.   Q.   That was plain to be seen?   A.   Yes sir.   "

The evidence is uncontradicted that the boards from the resaw were in plain sight from the front and side of the planer.

It was also plainly to be seen by the plaintiff as he passed by it
in going from the planer to the basement, and on his return
when he tripped his foot on the board or boards across his path.
It was in broad daylight, and there is no evidence that his vision
was obstructed in any way. He testified that going down into
the basement to clean out the blower was a usual duty he had
to perform—some days "would go down oftener than others."
There was no evidence showing any circumstances producing
hurry, excitement, or confusion on the part of the plaintiff
when going from the planer into the basement or at the time
of passing this lumber and tripping on his return. In such
circumstances it is no answer to the charge of contributory
negligence to say that the plaintiff did not know the board was
across his path until he tripped on it. When he went round
the truck to go into the basement he knew the resaw was in
operation, and he then saw that the lumber therefrom was
scattered about as it was being thrown off the table, though at
that time none of it extended across his path. The plaintiff
knew the location of the feedrolls in the planing machine, and
that their use was to draw lumber applied thereto between them
and so into the machine. He must have known that any other
object coming in contact therewith at the same place, if its
size or thickness would permit, was likely to be drawn between
them in the same way. In other words, he knew the dangerous
tendency of the machine in this respect. Knowing this, and the
fact that the lumber from the resaw was being piled upon the
floor between that machine and the planer, the manner of its
being done, and its proximity to his path to and from the base-
ment, and to the planer, it was his duty to exercise the care of
a prudent man in view of the circumstances and the dangers
attending them. Had he exercised such care when thus returning,
he would have seen the board or boards across his path and have
avoided tripping his foot thereon. What was said in *Harris*
v. *Bottum*, 81 Vt. 346, 70 Atl. 560, regarding the observance
of defects in place of work or in the machine, is equally appli-
cable here: "It would be manifest injustice to hold an employer
liable for injuries received by an employee through defects or
insufficiencies in place or machines that the employee observed
or that were plainly observable by him." In *Wiggins* v. *E. Z.*

*Waist Co.,* 83 Vt. 365, 76 Atl. 36, in discussing the question of assumption of risk, it is stated as a general rule, "that a servant is presumed to see and understand all that a prudent and intelligent person, with the same means and opportunities for acquiring a knowledge of the material facts and the same capacity for estimating their significance, would see and understand;" and that "the true test is, not whether he actually knows and comprehends, but whether, in the circumstances, he ought to know and comprehend the dangers which beset him." In *Carter* v. *Central Vermont R. R. Co.,* 72 Vt. 190, 47 Atl. 797, a case for personal injuries by the plaintiff while crossing the defendant's railroad track, the defendant's motion for a verdict was granted on the ground that it appeared that the plaintiff was guilty of contributory negligence in approaching and driving upon the track with too great speed, and in not using his eyes and ears with vigilance to discover and avoid the approaching train.    On exception this Court said:    "If, by the vigilant use of his eyes and ears—which in the circumstances ·is only ordinary care—the plaintiff might have discovered and avoided the danger, and omitted such vigilance, he was guilty of contributory negligence;   and he is chargeable with such knowledge of the approach of the train as he might have obtained by the exercise of that degree of care, which in the circumstances of danger, he was bound to use."    The plaintiff's testimony showed that he did not use his eyes and ears vigilantly when he reached the crossing, and the judgment was affirmed.    The same principle was applied as determinative in *Wallace's Admr.* v. *Fox,* 81   Vt.   136,   69 Atl. 665; *Flint's Admr.* v. *Central Vermont Ry. Co.,* 82 Vt. 269, 73 Atl. 500.

The plaintiff testified that he went by what the foreman told him—that he would take care of the boards from the resaw. The foreman's statement thus alluded to may be given the meaning that the plaintiff seems to have given it in his testimony, and yet the result is the same.   For as before seen when the plaintiff went to the basement he knew from observation where and how these boards were being piled on the floor,—which according to his uncontradicted testimony was within ten or twelve minutes before the accident,—and he knew the danger. Having such knowledge, the law required of him, when returning,

from the basement, care legally commensurate with the surroundings and dangers as he knew them or in the exercise of due care ought to have known them, to avoid injury; and the assurance of the foreman did not relieve the plaintiff from such requirement. *Reiser* v. *Southern* v. *Planing Mill & Lumber Co.*, 114 Ky. 1, 69 S. W. 1085; *Phillips* v. *Michaels*, 11 Ind. App. 672, 39 N. E. 669; *Gulf etc. Ry. Co. Brentford*, 79 Tex. 619, 15 S. W. 561, 23 Am. St. Rep. 377.

We think it clear that the defendant's motion for a verdict should have been granted on the ground of negligence by the plaintiff proximately contributing to the accident.

*Judgment reversed, and judgment for the defendant to recover its costs.*