GUILFORD BURLESON *v.* MORRISVILLE LUMBER & POWER
COMPANY.

November Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 8, 1913.

*Master and Servant—Injury to Servant—Contributory Negli-
. gence—Intoxication—Master's Duty to Warn—When In-
volved.*

The voluntary intoxication of a person does not relieve him from ex-
ercising the care required of a sober man in the same circum-
stances, and so if failure to exercise that care contributes to the
injury, he is guilty of contributory negligence and cannot recover
for the concurrent negligence of another.

A master was not negligent in failing to warn his servant of the
danger of stepping into a hole in the floor, or of coming in con-
tact with a saw, when the servant knew and appreciated those
dangers, since the rule requiring instruction applies only to
defects or dangers of which the master has actual or imputed
knowledge, and of which the servant has neither actual nor im-
puted knowledge and comprehension.

A servant has imputed knowledge of defects plainly observable, and
must exercise care commensurate with the dangers of which he
has actual or imputed knowledge.

Where an intoxicated employee in a sawmill, who had been ordered
by the foreman, who was repairing the links of a chain in a ma-
chine, to turn, as the foreman should direct, the wheel that oper-
ated the chain, without any suggestion or direction from any one
left his place at the wheel, intending to assist the foreman in
pulling the chain out of a groove, and stepped into a hole in the
floor, whereby his hand was thrown against a moving saw, he
could not recover, where he knew of the hole, and, though he
claimed he did not know its size, could have readily seen it had
he been sober, since, aside from the fact that he was acting out-
side his line of duty, his injury was due to his own failure to
exercise due care.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1912, Franklin County, *Butler, J.,* presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*F. G. Fleetwood* and *V. A. Bullard* for the defendant.

Plaintiff's voluntary intoxication and his admitted conduct severally amounted to contributory negligence. *Cassidy* v. *Stockbridge,* 21 Vt. 391; Thompson on Negligence, Par. 96 and 340; *Strand* v. *Chicago R. Co.,* 67 Mich. 380; 34 N. W. Rep. 712; Roberts Vt. Digest, page 1948, Plac. 28 and cases there cited; *Woods* v. *Tipton County,* 128 Ind. 289, 27 N. E. Rep. 611; *Illinois C. R. Co.* v. *Cragin,* 71 Ill. 177-81; Cyc. Vol. 29, Title Negligence, p. 534; *Hughes* v. *R. R. Co.,* 129 N. W. 956; *Bennett* v. *Electric Co.,* 56 Wash. 407; Bishop Non-Contract Law, 1st Ed. p. 513.

Plaintiff is also precluded from recovery because his injury was owing to failure to obey the foreman's instructions by remaining at the wheel. *Aller* v. *Hickson,* 111 Ga. 460; *Central of Ga. R. R. Co.* v. *McWhorter,* 115 Ga. 476; American and English Cyc. of Law, 2d Ed. Master and Servant, p. 97; *Bakers' Admr.* v. *Lexington Ry. Co.,* 89 S. W. 149; *Punkowski* v. *Newcastle Leather Co.,* 57 Atl. 599; *Duval* v. *Armour Packing Co.,* 95 S. W. 978; *McGill* v. *Maine and N. H. Granite Co.,* 70 N. H. 125; Am. St. R. 618.

*Elmer Johnson* for the plaintiff.

Intoxication is not contributory negligence, as matter of law, *Kingston* v. *Fort Wayne R. R.,* 40 L. R. A. 131. And, besides, the proximate cause of the injury was not intoxication, but defendant's negligence in exposing plaintiff to danger when he was intoxicated. *Bennett* v. *Seattle Electrical Co.,* 56 Washington 407; *Price* v. *St. Louis etc. R. R. Co.,* 75 Ark. 479; *Roseman* v. *Carolina R. Co.,* 19 L. R. A. 327—note; see also 49 L. R. A. 424; *Williamson* v. *Sheldon Marble Co.,* 66 Vt. 427; *Jones* v. *Florence Milling Co.,* 66 Wis. 268, 57 Am. Rep. 269; *Warren Vehicle Co.* v. *Siggs,* 91 Ark. 102, 120 S. W. 412; *Goss Ex'r* v. *Kentucky Refining Co.,* 125 S. W. 1061.

WATSON, J.  Defendant was the owner and operator of a water mill, and was engaged in getting logs and manufacturing them into lumber.  One C. L. Gates was the vice-president and manager of the company.  Under him one Sherman Farman was foreman at the mill and had supervision and charge of the other men at work there.  The general manager hired all the employees, including the plaintiff, and paid them for their services.  During the winter of 1910 and spring of 1911,—the plaintiff was injured May 26, 1911,—the general manager went to the mill several times each week, but occasionally two or three days elapsed without his going there to superintend the work and give orders in regard thereto.

Previous to the day of his injury, the plaintiff had been employed at the mill about five weeks, during which time he had worked trucking and stacking lumber outside the mill, except he ran a slab saw for about one-half hour, and on half a dozen occasions more or less he cut off a board with the cutting-off saw.

Among the machinery in the mill was an edger, having two saws.  The lumber is fed in at the front of the machine and is carried forward between the saws by an endless chain which has spikes or points on the links, supposed to come in contact with the lower side of the board and force it along until it is caught by two rollers just beyond the saws.  There is a small friction roll that operates a large wheel, about twenty-three inches in diameter, and the latter in turn operates the endless chain, running in an opposite direction to the arbor, carrying the saws.  The large wheel is brought into action and controlled by a lever back of the machine.  The length of the machine is sixteen feet and four inches.  Its framework is one foot and eleven inches above the floor, and the table on which the boards are carried forward is about three feet above the floor.  The length of the chain where it runs on top of the machine is about seven feet, of which about four feet is in front of the center of the saw-arbor, and about three feet, back of it.  On this arbor is a pulley over which runs the main belt, connecting with a pulley underneath the floor.  The belt passes through the hole in the floor, before mentioned, slanting on both sides of the pulley toward the front of the machine.  The hole extended in the same direction nineteen inches beyond the front

belt, and in the opposite direction, in part six and one-half inches beyond the point where the rear belt comes up through the floor, and in part four and one-half inches. The length of the hole at the shortest point was three feet and eight inches, and at the longest point, three feet and ten inches. It extended out sixteen inches from the machine. This was a larger hole than was necessary for the purpose of the belt, and might have been covered, leaving two inches on either side of the belt, which would have been sufficient for the passing and vibrating of the belt, without friction.

On the morning of the accident, the plaintiff, not knowing that he would be required to do work other than he had been doing, voluntarily became intoxicated and presented himself for work at the mill in that condition. He "staggered and acted like a man who was full," and was intoxicated at the time of his injury, but not so much so as to be stupid. At first his work was drawing lumber into the mill. Following that, Farnham was operating the edger, with the plaintiff and another employee assisting under his direction, by taking the boards from the back end of the machine. Farnham gave the plaintiff directions what to do. Shortly before the accident the chain did not work properly, and Farnham said to the plaintiff, "We will see if we can't fix this chain." Having tools to work with, Farnham got inside the framework of the machine, in front of the saws, where he could get at the lower links of the chain, directing the plaintiff to stand by the large wheel carrying the chain, and to turn the wheel when directed so to do. This wheel was stopped, but the other part of the machine was left running because necessary to the operation of the butting-off-saw. Pursuant to the directions so given, the plaintiff took his position opposite the large wheel,—the only place where he could stand to turn it,—and turned it as directed, from time to time, to bring along the links needing repairs. While the plaintiff was standing there in the performance of that duty, he, seeing that Farnham was having trouble in getting the chain out of the groove, voluntarily and without orders from any one, started over to help Farnham, and after thus leaving his position at the wheel, stepped into the hole in the floor, or when reaching over to get hold of the chain, he slipped and stepped into the hole (plaintiff put it both ways in

his testimony), and therewith threw out his hand on to the running saw, resulting in the injury for which damages are here sought to be recovered. There was nothing dangerous to the plaintiff in standing at the wheel and turning it as directed, and had he remained there in the performance of the work assigned him, he probably would not have been injured. The place where he stepped into the hole was toward the back end of the machine where the rear part of the belt comes up through the floor. The front of the large wheel is thirteen inches from the back side of the pulley on which the main belt runs, and a perpendicular line from the belt at this place would strike two inches in front of the back side of the hole in the floor. The hole was about two feet from where the plaintiff stood to turn the wheel, and between him and Farnham.

The plaintiff, by his own testimony, had quite frequently passed by the edger, near to it and on the side of the hole, ''some days quite a good many times, probably.'' He knew there was a hole in the floor where the main belt to that machine went through, but he never before noticed and did not know how large it was. At the time of the accident, notwithstanding his condition, he could see pretty well, eyesight good, his judgment was not entirely gone, and he remembered that the hole was there in the floor. He knew the belt and saw were running, and had he ''stopped to think'' he knew it would be dangerous to get his foot into the hole, and knew it would be dangerous to come in contact with the belt or saw. In answer to the question why he got his hand or arm on the saw, he said, ''I didn't realize I was getting them near that saw.'' He was given no instructions respecting the danger in working round the edger, or the hole, or the belt, and he testified that in his ordinary mind and understanding he probably needed no instruction not to step into the hole.

The foregoing are the material facts appearing by, or within the fair tendency of, the evidence, viewed in its most favorable light to the plaintiff.

At the close of the evidence, defendant moved for a verdict on several grounds, among which were that of contributory negligence by the plaintiff, and that the negligence, if any other than that of the plaintiff, which occasioned the injury, was not the negligence of the defendant, but of a fellow servant.

Without considering whether there was negligence on the part of the defendant, or by a fellow servant, we take up the question of negligence by the plaintiff, contributing to the accident.

The plaintiff alleged in two counts and proved without contradiction, that on the morning in question, both before and at the time of the accident, he was in a state of voluntary intoxication which made him unsteady in traveling, but not stupid, nor totally incapacitated for the performance of the work assigned him. Indeed it appears that he presented himself for work and worked at the different tasks given him before the accident. In view of the law it is not easy to see upon what theory this forms the basis for a right of recovery. In *Cassidy* v. *Stockbridge*, 21 Vt. 391, an action to recover damages for an alleged injury sustained by reason of the insufficiency of a highway, the court instructed the jury, among other things, that if the plaintiff, at the time of the accident, was so intoxicated as to be incapable of managing and conducting himself and his team with ordinary care and prudence, then he could not be said to be in the use of ordinary care, and if this want of ordinary care produced, or contributed in the slightest degree to produce, the injury complained of, he was not entitled to recover. The charge on this point was held to be unexceptionable and all that the defendant could claim.

The law is well settled in other jurisdictions, and we think the true rule is well stated by the highest court of New Jersey, "that voluntary drunkenness does not relieve a drunken man from the degree of care required of a sober man in the same circumstances, and if his drunkenness renders him incapable of exercising such care, then he contributes to any injury thereby sustained and bars recovery for another's negligence." *Bageard* v. *Consolidated Traction Co.*, 64 N. J. L. 316, 45 Atl. 620, 49 L. R. A. 424, 81 Am. St. Rep. 498; *Vizacchero* v. *Rhode Island Co.*, 26 R. I. 392, 59 Atl. 105, 69 L. R. A. 188; *Johnson* v. *Louisville & Nashville R. Co.*, 104 Ala. 241, 16 South. 75, 53 Am. St. Rep. 39; *Welty* v. *Indianapolis & Vincennes R. Co.*, 105 Ind. 55, 4 N. E. 410; *Woods* v. *Commissioners*, 128 Ind. 287, 27 N. E. 611; *Yazoo & M. V. R. Co.* v. *Dyer*, (Miss.) 59 So. 937; *Smith* v. *Norfolk & So. R. Co.*, 114 N. C. 728, 19 S. E. 863, 923, 25 L. R. A. 287.

32

It is said that the plaintiff was given no instructions respecting the dangers connected with working around the edger and the hole in the floor.   But so far as such dangers had to do with the plaintiff's injury, the master was not bound to instruct concerning them; for the rule requiring instruction applies only as to such defects and dangers as are known to the master, or in the exercise of proper care ought to be known to him, and which are unknown, both actually and constructively, to the servant, or not appreciated by him.   *Wiggins* v. *E. Z. Waist Co.*, 83 Vt. 365, 76 Atl. 36; *Low Moor Iron Co.* v. *La Bianca's Admr.*, 106 Va. 83, 55 S. E. 532, 9 Ann. Cas. 1177.   As before seen, the plaintiff had knowledge of, and appreciated, the dangers having relation to his injury.

At the time of the injury the plaintiff's duty, by the express orders of the foreman, was to stand by the large wheel and turn it as the foreman, repairing the links of the chain, should direct.   By the orders given, the plaintiff then had no other duty.   While in the performance of this duty he, of his own motion and without any suggestion or direction by any one, left the place of his assignment at the wheel to go to the assistance of the foreman in pulling the chain out of the groove, a work wholly outside of the plaintiff's assigned duty; and after thus leaving his position at the wheel, by slipping or otherwise, he stepped into the hole in the floor, resulting in his injury.   The plaintiff knew the hole was there and that the main belt was passing up and down through it.   The only thing he did not know concerning the hole was the size of it, and this was plain to be seen by him when at the wheel, or anywhere on that side of the machine.   His duties at the wheel were without any attending dangers, and his injury was wholly due to his leaving there to go elsewhere without exercising the care and prudence of a prudent man in view of the circumstances and the dangers attending them.   Had he in this respect exercised the care required of him as a sober man, to say nothing of his being outside his line of duty, he would have noticed the size of the hole and have avoided stepping into it.   He was bound to see defects plainly observable and to exercise care commensurate with the dangers to be apprehended.   The only fair and reasonable view of the evidence shows that the plaintiff failed to do this.   Consequently he was guilty of negligence contributing to his

injury, and he cannot recover.   In this respect, the case of *Hartigan* v. *Deerfield Lumber Co.,* 85 Vt. 133, 81 Atl. 259, is much in point, and is controlling.   There the plaintiff, when operating a planer, had occasion to go into the basement of the mill for a purpose within the line of his duty.   A resaw stood a little to the right'and back of the planer.   Boards from the resaw had to be run through the planer, and for this purpose at the time in question boards from the resaw had been piled or thrown upon the floor at the side of that machine and in front of the planer, one of which boards extended across the path taken by the plaintiff in going to and returning from the basement.   This board was about two inches above the floor.   When returning from the basement the plaintiff tripped on this board and was thrown headlong, his hand being caught between the feedrolls of the planer and injured.   He testified that he did not see the pile of lumber from the resaw before his injury and did not know the board was across his path until he tripped on it.   The uncontradicted evidence showed that the pile of boards was in plain sight from the front and side of the planer, the place where the plaintiff ordinarily stood when operating the machine; that it was plain to be seen by him as he passed by it in going to the basement, and on his return when he tripped, as before stated.   It was in broad daylight, his vision not obstructed, and nothing shown, producing hurry, excitement, or confusion on his part.   He knew the location of the feedrolls in the planer and their use; also their dangerous tendency to draw objects between them when coming in contact therewith. It was held to be no answer to the charge of contributory negligence to say that the plaintiff did not know that the board was across his path until he tripped on it; that knowing the circumstances to the extent above stated, it was his duty to exercise the care of a prudent man in view of them and the dangers attending them; that had he exercised such care he would have seen the board across his path and have avoided tripping thereon; and that the motion for a verdict should have been granted on the ground of contributory negligence.   Other cases in point are:   *Carter* v. *Central Vermont R. Co.,* 72 Vt. 190, 47 Atl. 797; *Wallace's Admr.* v. *Fox,* 81 Vt. 136, 69 Atl. 665; *Flint's Admr.* v. *Central Vermont R. Co.,* 82 Vt. 269, 73 Atl. 500.

The disposition of this question being determinative of the case, the application of the fellow servant doctrine need not be considered.

*Judgment reversed, and judgment for the defendant to recover its costs.*