BERENICE A. MONK, Admx., *vs.* BANGOR POWER COMPANY.

Penobscot.    Opinion December 17, 1914.

*Assumption of Risk.    Negligence.    Nonsuit.    Reasonable Care.    Revised*
*Statutes, Chap. 89, Secs. 9 and 10.*

Both on account of the failure to satisfactorily prove negligence on the part of
the defendant and upon the doctrine of assumption of risk, it is held that the
plaintiff's action cannot be. maintained, and that the nonsuit was properly
ordered.

On exceptions by plaintiff.    Exceptions overruled.

An action on the case to recover damages of defendant for negli-
gently causing the death of plaintiff's intestate.    The action is
brought under the provisions of Revised Statutes, Chap. 89, Secs. 9
and 10.    Defendant plead the general issue and filed a brief state-
ment, alleging that the' death of Benjamin W. Monk was caused
solely by the negligence of Benjamin W. Monk.    At the close of
plaintiff's evidence, the presiding Justice directed a nonsuit, and the
plaintiff excepted to said direction.

The case is stated in the opinion.

*Bartlett Brooks*, for plaintiff.

*E. C. Ryder, and Edgar M. Simpson*, for defendant.

SITTING:  SPEAR, CORNISH, BIRD, HALEY, PHILBROOK, JJ.

PHILBROOK, J.    This is an action on the case brought against the
employer of the intestate, charging that his death was caused by
the negligence of that employer.    The action is brought under the
provisions of R. S., Chap. 89, Secs. 9 and 10, for the exclusive benefit
of his widow, who is the administratrix, and of his four children.    At
the close of the plaintiff's evidence the presiding Justice ordered a
nonsuit to be entered, to which order the plaintiff seasonably excepted
and the case is before us upon those exceptions.

The first burden resting upon the plaintiff is to prove the negligence of the defendant by a fair preponderance of all the evidence in the case. This leads us to a careful study and analysis of the evidence presented in the record.

It appears that the defendant, at the time of the death complained of, was the owner, and was in control of and operating a certain dam and power house on the Penobscot river, between the town of Milford and the city of Old Town, for the purpose of generating and supplying electric power. The intestate was an employee of the defendant, working, as occasion required, on the switchboard, as lineman and at general work about the power house. The plaintiff claimed that intestate was never a foreman or assistant superintendent.

The dam was composed of concrete, having wooden timbers set into its top and extending longitudinally its entire length. These timbers were twelve inches square, with four inch pipes in the upper surface, into which wooden stakes were driven for the purpose of holding flash-boards in place. These stakes required renewal and replacement from time to time and while performing this task in the middle of December, 1912, when ice was running and water was flowing over the dam, the plaintiff's intestate was swept from the dam into the water below and quickly drowned. A fellow workman describes the accident thus: "Well, we went out beyond that ledge, and were putting the stakes in, and I went back onto this ledge to get another stake. We could only put in one at a time. A man could only lug one stake and put it out there in what we called safety. And Ben was taking out the stakes, and I was putting in the new ones. I would lug out one, and then every time I would go back to the ledge and get another one where we had taken them across and put them on the ledge, and while I was back to the ledge,—I just got back to the ledge,—we had to watch our chances to go by—so I was back to the ledge getting another stake, and as I turned around I saw Ben down on the dam hanging onto a broken stake, and I dropped this stake and run out where he was, and just got hold of him just as a cake of ice slid up on his arms, and then another cake of ice struck me. He was going when I got hold of him, and another cake of ice struck me about in the knees there somewhere, and the current turned the upper edge of it down and made a regular coffer dam of my legs. I had to let go of him to swing around. I didn't want to go down over there head first." The first name of the plaintiff's intestate was Benjamin, and was referred to by this witness as "Ben."

The negligence declared upon in the writ and relied upon as a basis of action may be thus epitomized:

1.   Failure to draw the water off from the dam to a safe and convenient level.

2.   Failure to moor a boat over and above the dam for the purpose of placing the flash-boards therefrom.

3.   Failure to provide other and suitable safeguards.

In other words, the plaintiff says that failure in these respects constituted want of ordinary care on the part of the defendant. Ordinary care is synonymous with reasonable care.   And in all cases reasonable care means such care as reasonable and prudent men use under like circumstances.   *Caven* v. *Granite Co.*, 99 Maine, 278. It is such care as an ordinarily reasonable and prudent person exercises with respect to his own affairs under like circumstances.   And this rule is now generally held to apply to employment in the most perilous places and in the manipulation and use of the most dangerous agencies.   *Raymond* v. *Portland Railroad Company*, 100 Maine, 529.

Does the record disclose the exercise of ordinary care on the part of this defendant?   We think the question must be answered in the affirmative.   The situation was similar to that existing in many cases where dams are erected and water power is developed in our State.   One witness called by the plaintiff testified that he was familiar with the usual precautions taken when flash-boards are put on and that they were put on in different ways; that they were sometimes put on from boats or scows, sometimes the workmen wade out on the dam as in this case, that in one place they were put on in one way and in other places in other ways.   It does not appear that on this particular dam any method was used except that of wading out on the dam.   It also appears that the stake holes were only five feet apart and when only one hole was prepared at a time and a new stake inserted therein the workmen had a substantial support on which to depend as the work progressed.   It appears that the intestate had thus done the work on previous occasions.   On this particular occasion, although warned to the contrary, he took out six or seven old stakes before replacing new ones, an act which the employer was not bound to anticipate, and an act which added materially to the danger of the situation.   This was not a condition of danger for which the employer was bound to provide.   So far as the evidence discloses, it appears that under all the circumstances, judging from

general experiences of the past and not by the backward look from the vantage ground of a particular event, the usual, ordinary duty which the defendant company owed to this plaintiff was fully done.

But another important element is to be considered. The servant is conclusively held to have assumed the risks of dangers which are known to him, and, as well, those which are incident to his work and which are obvious and apparent to one of his intelligence and experience. He is chargeable with knowledge of the things and conditions which he sees or ought, by the exercise of reasonable care, to see. And the master has a right to presume that he will see and guard against obvious dangers. If the servant fails in this respect, he is negligent. *Caven* v. *Granite Co.*, supra. In this case, whatever risks existed must have been fully known by this intestate, with his experience and intelligence, and he must be charged with assumption of those risks.

But the plaintiff urges that long continued labor, without sufficient rest, rendered the servant incapable of appreciating these risks. While such instances, under certain conditions and with certain risks, may arise, we do not think the record here supports the plaintiff's contention. Indeed the testimony would seem to clearly negative the idea. And not only this but when cautioned by a fellow workman as to the added danger arising from removal of extra stakes he acknowledged the warning. He had done the same work before, he assumed to give some directions at least to his fellow workmen, and so far as the evidence shows fully understood the task he was undertaking, and if so must have understood the risks of that undertaking.

Both on account of failure to satisfactorily prove negligence on the part of the defendant, and upon the doctrine of assumption of risk, it is apparent that the plaintiff's action cannot be maintained; and it was not only competent but proper for the presiding Justice to so declare by directing a nonsuit. *Bryant* v. *Great Northern Paper Co.*, 103 Maine, 32.

*Exceptions overruled.*