STANLEY F. GARFIELD *v.* PASSUMPSIC TELEPHONE CO.

October Term, 1915.

Present:   MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed April 9, 1917.

*Master and Servant—Safe Place Doctrine—When not Applicable—Electric Light Company—When Chargeable with Negligence in Construction of Pole Line—Assumption of Risk—Duty to Caution and Instruct—Notice to Servant as to Defects—Question for Jury—Negligence—Contributory Negligence—Fellow Servant Doctrine—Duty of Servant to Inspect—Instructions to Jury—Harmful Error—Exceptions.*

The rule that it is the duty of the master to provide his servant with a reasonably safe place in which to work is not applicable to places prepared by the servant as a means of carrying on his work, nor where the servant is practically making his working place by the changes incident to the work that is being carried on, nor when it is necessary for the servant to work in the unsafe place to make required repairs.

The nature of the service of a lineman in the employ of a telephone company is such that it cannot be said to be the duty of the company to furnish him a safe pole upon which to work, but this rule is not applicable to defects in the original installation of the pole.

An electric light company which constructs a pole line owes to those who are to work upon the poles the duty of setting the poles in a manner reasonably safe with reference to the danger of the service.

An electric light company which owns and operates a line of poles and wires constructed by another company, is chargeable with the consequences of any negligence on the part of its vendor in respect to the setting of the poles, at least as soon as it ought, in the exercise of reasonable diligence, to have learned of the defect.

A lineman in the employ of an electric light company assumes the ordinary risks incident to the duties of his employment, but does not assume risks which ought not to exist and would not exist but for the negligence of the company, unless he knows and com-

prehends them, or unless they are so obvious that the law will charge him with knowledge and comprehension.

A lineman in the employ of an electric light company has a right to assume that a pole upon which he is to work is properly set, until something comes to his notice from which he ought, in the exercise of reasonable prudence, to have learned that it was not.

It is the duty of the master to caution and instruct a servant who is inexperienced in the work required of him, and ignorant of the risks attending it and of the method of avoiding them if his inexperience and ignorance are known, or ought to be known, to the master.

A placard placed by an electric light company in a room where linemen's tools were kept requiring that employees should make a personal inspection and examination of the poles, is not sufficient to charge a lineman, employed by the company, with knowledge of the insufficient setting of a pole, which could have been learned by digging at the base of the pole.

On the evidence in this case, the sufficiency of the means taken to compensate for the shallow setting of a pole to which electric wires were attached was one of fact, and for the jury.

On all the evidence in this case it cannot be said that plaintiff was guilty of contributory negligence as matter of law.

Where a servant is injured through the concurring and proximate negligence of the master and a fellow servant, the negligence of the fellow servant will not prevent a recovery.

A servant assumes the risk due to a defect not obvious, which is of a nature ordinarily incident to the business and is not due to the master's negligence.

The master's continuing duty of maintenance does not reduce the servant's duty of inspection to mere observation, especially in the case of a servant employed in general repairing.

Where there is an erroneous statement of law in the charge, the fact that there are also general instructions inconsistent with it will not render the error harmless.

An exception to a charge upon a certain subject is sufficiently explicit when there is only one place in the charge where the subject in question is mentioned.

CASE FOR NEGLIGENCE. Plea, the general issue. Trial by jury at the June Term, 1914, Caledonia County, *Butler*, J., pre-

siding. Verdict for plaintiff. Defendant excepted. The opinion states the case.

*Dunnett & Leslie* for the defendant.

The nature of the work upon which the plaintiff was engaged, being the making of repairs, was such that the safe place doctrine does not apply. 26 Cyc. 1148; *Sias* v. *Consolidated Lighting Co.,* 73 Vt. 35; *McGarty* v. *Southern New England Telephone Co.,* 60 Conn. 635, 38 Atl. 359; *Cumberland Tel. & Tel.* v. *Loomis,* 11 S. W. 356 (Tenn.) ; *Dunbar* v. *Hollingworth & Whitney Co.,* 109 Me. 461, 84 Atl. 992; *Button* v. *Central Union Telephone Co.,* 131 Fed. 844; *Dartmouth Spinning Co.* v. *Achard,* 84 Ga. 14, 6 L. R. A. 190; *Williamson* v. *Sheldon Marble Co.,* 66 Vt. 427, 29 Atl. 669.

The plaintiff assumed the risk of the falling of the pole *Hart* v. *Village of Clinton,* 100 N. Y. S. 1092, 115 App. Div. 761; *Dunbar* v. *Hollingsworth & Whitney Co.,* 109 Me. 461, 84 Atl. 992; *McIsaac* v. *North Hampton Electric Lighting Co.,* 72 Mass. 89, 51 N. E. 524; *Finlayson* v. *Utica Mining & Milling Co.,* 67 Fed. 507; *Green* v. *Western Union Telegraph Co.,* 72 Fed. 250.

The plaintiff should be held to have constructive knowledge of the notice requiring him to make a perfect inspection of the pole, which shows conspicuously posted in a place where he could not help seeing it, notwithstanding his denial that he saw it. *Herrington* v. *Rutland R. R. Co.,* 94 Atl. 431; *Labelle* v. *C. V. Ry. Co.,* 87 Vt. 87, 88 Atl. 517; *Ramulski* v. *Menasha Paper Co.,* 133 N. W. 132; *Penn R. R. Co.* v. *Langdon,* 92 Pa. St. 21, 37 Am. Rep. 651; *Norfolk, etc., R. R. Co.* v. *Williams,* 80 Va. 165, 15 S. E. 522; 1 Labatt, Master & Servant, Sec. 127 pp. 505 and 506.

Defendant owed no duty to instruct the plaintiff. Labatt, Master & Servant, (2nd ed.) Sec. 1313, p. 3693; *ibid.* Sec. 394, pp. 1035-1044; *ibid.* Sec. 238; *Riley* v. *Neptune* (Ind.), 103 N. E. 407; *Village of Montgomery* v. *Robertson,* 82 N. E. 396; *H. D. Williams Cooperage Co.* v. *Kittrell,* 155 S. W. 119; *Lantry-Sharpe Contracting Co.* v. *McCracken,* 150 S. W. 1156; *Brownwood Oil Mill* v. *Stubblefield,* 115 S. W. 626; *Wiggins* v. *E. Z. Waist Co.,* 83 Vt. 365.

The lineman in charge of the gang in which plaintiff was working was not a vice principal, but a fellow servant. *Lambert*

v. *Mississippi Pulp Co.,* 72 Vt. 278; *Garrow* v: *Miller,* 72 Vt. 284, 47 Atl. 1085; *Brown* v. *Peoples Gas Lighting Co.,* 81 Vt. 477, 71 Vt. 204, 22 L. R. A. (N. S.) 738; *Doyle* v. *Melendy,* 83 Vt. 339, 75 Atl. 881; *Hall* v. *N. Y. Telephone Co.,* 153 N. Y. S. 322; *Goodman* v. *Western Union Telegraph Co.,* 69 S. E. 1089; *Morgridge* v. *Providence Telephone Co.,* 39 Atl. 328, 78 Am. St. Rep. 879.

*Porter, Witters & Harvey* and *John W. Redmond* for the plaintiff.

It is the duty of the master to provide his servant with a reasonably safe place in which to work and to maintain it in a reasonably safe condition. *Lassasso* v. *Jones Bros. Co.,* 88 Vt. 526; *Duggan* v. *Heaphy,* 85 Vt. 515; *Barney* v. *Quaker Oats Co.,* 85 Vt. 372; *Marshall* v. *Dalton Paper Mills,* 82 Vt. 489; *Vaillancourt* v. *Grand Trunk Ry. Co.,* 82 Vt. 416; *Harris* v. *Bottum,* 81 Vt. 346; *Williams* v. *Norton Bros.,* 81 Vt. 1; *Huston* v. *Brush & Curtis,* 66 Vt. 331; *Davis* v. *Central Vermont R. R. Co.,* 55 Vt. 84.

The rule as laid down in some cases that a telephone company is under no duty to keep its poles safe for its linemen to work upon, has no application to defects of original construction. *Southern Bell Tel. Co.* v. *Covington* (Ga.), 77 S. E. 382; *Bland* v. *Shreveport, etc., Co.,* 145 Mich. 86; *Chisholm* v. *N. E. Tel. & Tel. Co.,* 185 Mass. 82; *Kelly* v. *Erie Tel. & Tel. Co.* (Minn.), 25 N. W. 706; *Ault* v. *Neb. Tel. Co.* (Neb.), 118 N. W. 73; *Willis* v. *Plymouth, etc., Co,* 75 N. H. 453; *Ricker* v. *N. Y. O. & W. R. R. Co.* (N. Y.), 64 App. Div. 357.

Furthermore, the defendant having assumed to inspect its lines was responsible for the performance of that duty. *McGuire* v. *Bell Tel. Co.,* 167 N. Y. 208; *Western Union Tel. Co.* v. *Tracy,* 114 Fed. 282; *Cumberland Tel. Co.* v. *Bills,* 128 Fed. 272; *Weiden* v. *Bush Electric Co.,* 73 Mich. 268, 41 N. W. 269; *Essex County Electric Co.* v. *Kelley,* 60 N. J. L. 306, 37 Atl. 619; *McDonald* v. *Postal Tel. Co.,* 22 R. I. 131, 46 Atl. 407.

It is the duty of the master to warn and inspect his inexperienced servant as to those dangers to avoid, which peculiar skill and knowledge are required and which are known to the master and unknown to the servant. *Carleton* v. *E. & T. Fairbanks & Co.,* 88 Vt. 537; *Wiggins* v. *E. Z. Waist Co.,* 83 Vt. 365;

*Sias* v. *Consolidated Lighting Co.,* 79 Vt. 224; *Williamson* v. *Sheldon Marble Co.,* 66 Vt. 427; *Reynolds* v. *B. & M. R. R. Co.,* 64 Vt. 66; *Jackson Fibre Co.* v. *Meadows,* 159 Fed. 110; *Britton* v. *Central Union Tel. Co.,* 131 Fed. 844; *Cumberland Tel. & Tel. Co.* v. *Bills,* 128 Fed. 273; *Western Union Tel. Co.* v. *Burgess,* 108 Fed. 26.

The question of the plaintiff's inexperience and whether instructions were required was for the jury. *Sias* v. *Consolidated Lighting Co.,* 79 Vt. 224.

The notice posted by the defendant did not discharge the defendant's duty of warning and construction. *Ault* v. *Neb. Tel. Co.* (Neb.), 118 N. W. 73.

The plaintiff did not assume the risk of the defendant's negligence in maintaining the pole as it did. He had the right to assume that the defendant had used diligence to provide him a suitable place in which to work. *Lassasso,* v. *Jones Bros. Co.,* 88 Vt. 526; *Marshall* v. *Dalton Paper Mills,* 82 Vt. 489; *Vaillancourt* v. *Grand Trunk Ry. Co.,* 82 Vt. 416; *Drown* v. *N. E. Tel. Co.,* 80 Vt. 1; *Livingsway* v. *R. R. Co.,* 145 Mich. 86; *Bland* v. *Shreveport, etc., Co.* (La.), 36 L. R. A. 114; *Southern Bell Tel. Co. Covington* (Ga.), 77 S. E. 282; *Chisholm* v. *N. E. Tel. & Tel. Co.,* 185 Mass. 82; *Kelly* v. *Erie Tel. & Tel. Co.* (Minn.), 25 N. W. 706; *Ault* v. *Neb. Tel. Co.* (Neb.), 118 N. W. 73; *Willis* v. *Plymouth, etc., Co.,* 75 N. H. 453; *Western Union Tel. Co.* v. *Burgess,* 108 Fed. 26; *Britton* v. *Central Union Tel. Co.* (C. C. A.), 131 Fed. 844; *Jackson Fibre Co.* v. *Meadows,* 159 Fed. 110.

Such a risk was not assumed by the plaintiff, unless he knew or comprehended it or it was so plainly obvious that he will be taken to have known and comprehended it. *Dunbar* v. *C. V. Ry. Co.,* 79 Vt. 474; *Dumas* v. *Stone,* 65 Vt. 443.

The plaintiff did not assume the risk of the failure of the defendant to warn and instruct him. *Carleton* v. *E. & T. Fairbanks & Co.,* 88 Vt. 537.

Even if the negligence of a fellow servant contributed to the accident, if the negligence of the defendant was also proximate, the plaintiff is not barred from recovery. *Marshall* v. *Dalton Paper Mills,* 82 Vt. 489; *Lincoln* v. *Central Vt. Ry. Co.,* 82 Vt. 187; *Morrisey* v. *Hughes,* 65 Vt. 553.

MUNSON, C. J.   The plaintiff was injured by the falling of

a telephone pole on which he was working. The defendant was not the constructor of the line, but had owned and operated it over a year. The defect complained of was in the setting of the pole. The defendant moved for a directed verdict on grounds which raise the question whether the duty of inspecting the pole rested on the plaintiff or on the defendant.

It is the duty of the master to provide the servant with a reasonably safe place in which to work. But the rule has its exceptions. It is not applicable to places prepared by the servant as a means of carrying on the work he has undertaken to do. *Garrow* v. *Miller,* 72 Vt. 284, 47 Atl. 1087. Nor is it applicable where the servant is practically making his working place by the changes incident to the work that is being carried on. *Conroy* v. *Nelson,* 86 Vt. 175, 84 Atl. 737. Nor does it apply where it is necessary for the servant to work in the unsafe place to make the required repair. *Anderson* v. *Howe Scale Co.,* 90 Vt. 244, 249, 97 Atl. 997; *Metallic, etc., Co.* v. *Watson,* 51 Colo. 278, 117 Pac. 609, Ann. Cas. 1913 A, 1276. The nature of a lineman's service is such that it cannot be said to be the duty of the company to furnish him a safe pole on which to work. *Sias* v. *Consolidated Lighting Co.,* 73 Vt. 35, 50 Atl. 554. But this exception to the general rule is itself subject to an exception. It is not applicable to defects in original construction. The pole which was the basis of the comments and decision in the Sias case was rotten from long standing. In this case, shallow setting with insufficient bracing permitted the fall of a sound pole. The distinction presented by these cases has frequently been recognized and applied. Note, 21 L. R. A. (N. S.) 774, 778; *Bland* v. *Shreveport, etc., Co.,* 48 La. Ann. 1057, 20 South. 284, 36 L. R. A. 114; *Chisholm* v. *New England, etc., Co.,* 185 Mass. 82, 69 N. E. 1042; *Livingway* v. *Houghton, etc., Co.,* 145 Mich. 86, 108 N. W. 662; *Southern, etc., Co.* v. *Covington,* 139 Ga. 566, 77 S. E. 382; *Kelly* v. *Erie, etc., Co.,* 34 Minn. 321, 25 N. W. 706; *McDonald* v. *Postal Telegraph Co.,* 22 R. I. 131, 46 Atl. 407.

The company which constructed this line owed to those who were to work upon its poles the duty of setting them in a manner reasonably safe with reference to the danger of the service. The defendant, as its successor in ownership and operation, became chargeable with the consequences of any negligence of its vendor in this respect, at some time differently indicated by the authorities, but at least as soon as it ought in the exercise of reasonable

diligence to have learned of the defect. *Atlantic, etc., Co.* v. *Reynolds,* 117 Ga. 47, 43 S. E. 456.

A lineman assumes the ordinary risks incident to the duties of his employment. *Drown* v. *N. E. Telephone & Telegraph Co.,* 80 Vt. 1, 14, 66 Atl. 801. But risks which ought not to exist and would not exist but for the employer's negligence are not classed as ordinary. *Severance* v. *N. E. Talc Co.,* 72 Vt. 181, 47 Atl. 833. These the lineman does not assume unless he knew and comprehended them, or unless they were so obvious that the law will charge him with knowledge and comprehension. *Miner* v. *Telephone Co.,* 83 Vt. 311, 318, 75 Atl. 653, 26 L. R. A. (N. S.) 1195. The defendant being charged with the duty of safe construction, the plaintiff had a right to assume that this pole was properly set, until something came to his notice from which he ought, in the exercise of reasonable prudence, to have learned that it was not. *Eastman* v. *Curtis,* 67 Vt. 433, 32 Atl. 232.

There was evidence that before the defendant bought the line its engineer and vice-president visited and made some examination of every pole, and that there had been a subsequent inspection of the line. The pole in question was surrounded by a mound of earth and stones; and there was evidence that an experienced lineman would understand from this that it lacked depth of setting, and that its safety would depend upon the sufficiency of the mound and the upper attachments. If the plaintiff was inexperienced in the work, and ignorant of the risks attending it and of the methods of avoiding them, and this was known or ought to have been known to the defendant, it was the defendant's duty to caution and instruct the plaintiff regarding them. *Reynolds* v. *Boston & Maine R. R.* 64 Vt. 66, 24 Atl. 134, 33 Am. St. Rep. 908. If the defendant failed in the performance of this duty, the conduct of the plaintiff is to be considered and his duty measured with reference to this fact. *Hayes* v. *Colchester Mills,* 69 Vt. 1, 37 Atl. 269, 60 Am. St. Rep. 915.

The defendant argues that the plaintiff was an experienced lineman and therefore not entitled to instruction; but upon the evidence as it stands, which we do not deem it necessary to recite, we think this cannot be said as matter of law.

The only instruction claimed by the defendant, other than a general caution to be careful in climbing poles, was by means of a placard posted in the room where the linemen kept their tools and went to get materials. The defendant claims that the

opportunity shown charges the plaintiff with the knowledge obtainable by a reading of this placard. But we think the question was for the jury. In any event, we think the requirement that the employee "make a personal inspection and examination of the condition of the poles" was not sufficient to charge the plaintiff with knowledge of what could be learned by digging to the bottom of the pole.

It is urged that there was no evidence tending to show negligence on the part of the defendant. It appears that the pole was set in the ground twenty inches instead of five feet because of a ledge of rocks, and that the surrounding mound was about three feet high; that one end of a plank was spiked to the pole about eight feet above the ground and the other end to a suitable post in a highway guard rail; that the pole was a junction pole, and carried four through wires running out in four directions at different angles. It is said that all the evidence showed that this was a proper and the usual method of setting a pole in the conditions existing at this place. But this left the sufficiency of the means taken to compensate for the shallow setting an open question, and obviously one of fact.

The defendant also claims that the plaintiff failed to produce evidence that he was free from contributory negligence. The plaintiff was one of three men sent out to cut away limbs that interfered with the line, straighten leaning poles, guy any that needed it, pull up slack wires, and replace broken glass. The mound of earth was concealed by bushes. The plaintiff did not go up the pole from the bottom, but went upon it by way of the plank. The pole was thirty feet above ground and had a slant of two feet. The purpose of ascending the pole was to straighten it and adjust the wires. It was to be made a test pole, and this required that the through wires be cut and "deadended" on double groove insulators. The plaintiff tied a rope to the top of the pole, and pulled on one of the wires with the "come-alongs," while the two men on the ground pulled on the rope. Defendant's evidence tended to show that at this point the plank was pried off the fence post to facilitate the straightening, but the plaintiff denied this; saying however that the pulling might have had some effect in loosening the nails. After the pole was straightened the plaintiff remained on it to make the necessary changes, and another man came up the pole to assist

him, and while they were pulling on one of the wires it broke and the pole fell.

Plaintiff testified that he had never seen a pole set, nor known anything about their being set shallow, nor known what it meant when he saw a pole with a mound around it; that when he started to climb the pole he struck his spurs into it and shook it, and it appeared firm—as firm as any pole he ever climbed; that he felt nothing different while going up the pole, nor when another was coming up while he was at the top; that there was no swaying when the two were at work there, and no jar or disturbance of the pole in any way until the wire broke.

The defendant argues that the plaintiff was guilty of negligence contributing to his injury in causing the supporting plank to be loosened and in proceeding without its being refastened; in assisting to straighten the pole and then proceeding without having the dirt securely tamped in the space necessarily left at the base of the pole; in remaining at the top of the pole after it was straightened with only the wires to prevent it from falling back into its original position, and continuing to pull on the wire until it broke; and in failing to take ordinary precautions to find out conditions at the butt of the pole.

This is not the case of a single obvious defect, the effect of which might properly be inferred to be within the comprehension of any person of ordinary intelligence. The situation here comprised a number of related conditions, on the combined effect of which the question of safety was to be determined. The plaintiff might have known of the existence of the mound, and what its existence indicated, and of the purpose of the plank, and of the bracing effect of the wires, and yet from inexperience and want of instructions have been without any real comprehension of the effect of this combination of facts upon the safety of the pole for the purpose of the work he was to do, and so without judgment as to what could safely be done by way of detaching or pulling upon a wire.

The defendant bases some propositions upon the claim that the lineman in charge was a fellow servant of the plaintiff. As the case stands the three men were unquestionably fellow servants, but the witnesses are not agreed as to which one of the plaintiff's associates was in charge. As far as the exceptions show the work was not done under the particular direction of anyone. But the details are not important, for if the directions or con-

duct of one or both of the other members of the gang contributed to the accident it would not relieve the defendant from liability. Where a servant is injured through the concurring and proximate negligence of the master and a fellow servant, the negligence of the fellow servant will not prevent a recovery. *Lincoln* v. *Central Vt. Ry. Co.,* 82 Vt. 187, 72 Atl. 821, 137 Am. St. Rep. 998.

The defendant's claim that the unsafe condition of the pole was created by the plaintiff and his fellow servants is based upon the proposition that on all the evidence the original setting and guying of the pole was proper and adequate; but we have seen that the evidence left this an open question.

The views above expressed dispose of all the grounds urged in support of the motion for a directed verdict, and cover many of the questions raised by the 97 exceptions relating to the evidence and the charge which have been argued by defendant's counsel. Passing such questions relating to the evidence as may not have been thus disposed of, we proceed to consider an exception taken to the charge.

In outlining the issues the court instructed the jury that if the accident occurred through the legal fault of the defendant they were to inquire whether it was one of the risks assumed by the plaintiff by his contract of employment; and in another part of the charge they were told that the servant assumes the ordinary risks of his employment, and such extraordinary risks as were known to him and comprehended. The jury were told further that if the pole was not properly secured to render it reasonably safe and the plaintiff was without experience, and the defects and dangers "were extraordinary, or not known or comprehended by him," it was the duty of the defendant to instruct the plaintiff regarding them, if the plaintiff's want of experience was known to the defendant. This was followed by the statement that if the pole was safe when erected and afterwards became unsafe, and the defendant knew or ought to have known of it, it was its duty to remedy the defect; and that "if the defect was extraordinary and unknown to the plaintiff," and the plaintiff was inexperienced, it was the defendant's duty to instruct him regarding it. And it was further said in this connection that while the servant was bound to observe the apparent conditions and use due care, "he would not be bound to make extraordinary inspection or to look for latent and hidden defects.

Such defects would be extraordinary * * *." Later the conditions regarding the setting and guying of the pole were recited as affording the basis for determining "whether this was an ordinary risk and an obvious danger."

The defendant excepted to the court's statements regarding extraordinary inspection and what ordinary dangers were, and to its failure to distinguish between ordinary and extraordinary dangers; and under these exceptions it is insisted that if the term "extraordinary inspection" could properly be used, its use with the alternative "or to look for latent or hidden defects" was misleading, and that the jury were in effect told that latent and hidden defects were necessarily extraordinary.

The above instructions were given as guides to the jury in determining whether the defects which caused the plaintiff's injury were risks which he assumed, and in elucidation of the general rules that a lineman assumes the risks ordinarily incident to his employment, and does not assume extraordinary risks unless he knows and comprehends them. In one of these instructions it is said in substance that the plaintiff was not bound to look for latent and hidden defects, because such defects are extraordinary. This was clearly error. A defect not obvious, which is of a nature ordinarily incident to the business, and is not due to the master's negligence, is an assumed risk. Latent and hidden defects may exist without being due to any failure of duty on the part of the master. The continuing duty of maintenance which rests upon the master is not such as to reduce the servant's duty of inspection to mere observation. This is especially so in the case of a servant employed for general repairing. The duty to keep in repair which the master owes to his servants generally must be performed by servants, and the nature of the work may be such as to combine the duties of inspection and repair in the same individuals.

The plaintiff claims that this exception is not available because of a further statement in a supplemental charge; because the matter was made sufficiently clear in other parts of the main charge; and because the exception failed to point out the claimed distinction.

In a supplemental charge covering several points, the court remarked, without special connection: "By extraordinary danger or risk we mean a danger or risk not ordinarily incident to the employment." If this reference to the matter had recognized the

fact that something inconsistent with it had previously been said, which this was intended to correct or explain, it might have obviated the difficulty. Stated as it was, it cannot be supposed to have made the previous statement harmless. The fact that there were general instructions in the main charge inconsistent with the erroneous statement will not avail to defeat the exception. And we think the exception taken was sufficient to direct the attention of the court to this particular part of the charge. It is the only place where the court used the expression ''extraordinary inspection'' and directly defined extraordinary defects.

The scope and application of the previous discussion are such that we do not deem it necessary to consider the exceptions further.

*Judgment reversed and cause remanded.*