PALMER LANDING *v.* TOWN OF FAIRLEE.

May Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 7, 1941.

128

C. O. *Granai* (*I. M. Penn* of counsel) for plaintiff.

*Raymond Trainor* and *Alfred A. Guarino* for defendant.

MOULTON, C. J. The plaintiff was one of a party of five men employed by the defendant town to excavate gravel from a bank. While so engaged the bank caved in and he was seriously in-

jured. Upon trial below a verdict was directed against him and the cause is here upon his exceptions.

There is little or no conflict in the evidence as to the material facts. The bank was between twelve and fifteen feet high, and the pit was about fifty feet wide and extended inward some twenty or thirty feet. The soil was composed of mixed gravel and clay, so hard that it had to be loosened by a pick before a shovel could be used, and the bank, at the back of the pit, slanted inward so that the top extended some three feet over the space where the men were working, of which the plaintiff was aware. The digging was done on the floor of the pit, which became deeper and deeper as the work progressed, and from time to time the soil was taken from the bank, so that it came down into the truck that had been placed to receive it, although the overhang of the bank remained the same from the day when the plaintiff was first employed, on a Monday, until the day of the accident, the following Thursday. No loose material had previously fallen into the pit, but on the day before the accident one of the men sat down with his back against the bank and was warned by the plaintiff and the others that he had better get up, for if the bank should fall he would be injured. When the accident happened the truck had been backed into the pit against the bank under the overhang and the plaintiff was some six or seven feet from its side, loading the gravel into the truck. The earth and gravel fell from the overhanging portion above. The plaintiff who was thirty-eight years old, able bodied and accustomed to work as a laborer, was hired by the foreman in charge, who sent him to the pit on the truck, and who, so far as appears, did not give any specific instructions as to the method of prosecuting the work, or visit the place during the period of the plaintiff's employment. The men did the work as they wanted to do it.

No statutory regulation of the relation of master and servant is involved in this cause. The action is predicated upon the common law obligation of a master to furnish his servant a reasonably safe place in which to work and to keep such place in reasonable repair. See *Ryder* v. *Vermont Last Block Co.*, 91 Vt. 158, 165, 99 Atl. 733; *Harris* v. *Bottum and Torrance*, 81 Vt. 346, 352, 70 Atl. 560; *McDuffee's Admx.* v. *Boston & Maine R.R.*, 81 Vt. 52, 68, 69 Atl. 124, 130 Am. St. Rep. 1019. This rule, however, does not apply where the work in which the servant is en-

gaged is of such a nature that its progress constantly produces changes in the conditions and surroundings, for in such a situation the hazards arising therefrom to which the servant is exposed are regarded as the ordinary dangers of his employment and, consequently, are assumed by him. *Lassasso* v. *Jones Bros. Co.,* 88 Vt. 526, 533, 93 Atl. 266; *Conroy's Admx.* v. *Nelson and Nelson,* 86 Vt. 175, 180, 84 Atl. 737; *Garfield* v. *Passumpsic Tel. Co.,* 91 Vt. 315, 320, 100 Atl. 762. And in addition to the ordinary dangers the servant, if he voluntarily continues in the employment, also assumes such extraordinary risks, even those that are the result of a breach of duty on the part of the master, as he has opportunity to ascertain, and does in fact ascertain and comprehend or are so plainly observable that he must be taken to know and comprehend them. *Harris* v. *Bottum et al., supra; McDuffee's Admx.* v. *Boston & Maine R.R., supra; Admr. of Carbine* v. *Bennington & Rutland R. R. Co.,* 61 Vt. 348, 351, 17 Atl. 491. "The general rule," said the late Chief Justice Powers in *Wiggins* v. *The E. Z. Waist Company,* 83 Vt. 365, 370, 371, 76 Atl. 36, 38, "is that a servant is presumed to see and understand all that a prudent and intelligent person, with the same means and opportunities for acquiring a knowledge of the material facts and the same capacity for estimating their significance, would see and understand. The true test is, not whether he actually knows and comprehends, but whether, in the circumstances, he ought to know and comprehend the dangers which beset him." See, also, *Hartigan* v. *Deerfield Lumber Co.,* 85 Vt. 133, 139, 81 Atl. 259. His employer has a right to assume that he will see and guard against obvious dangers. *Monk* v. *Bangor Power Co.,* 112 Me. 492, 92 Atl. 617, 618. The burden of proving that the servant did not know and comprehend the danger rests upon the plaintiff, and unless there is evidence tending to show that fact, the defendant is entitled to a directed verdict. *McDuffee's Admx.* v. *Boston & Maine R. R., supra; Dunbar* v. *Central Vermont Ry. Co.,* 79 Vt. 474, 477, 65 Atl. 528.

██ Here, the plaintiff was a man of mature years and, as far as appears, of ordinary intelligence. The conditions and circumstances of his employment were constantly changing, since the progressive deepening of the pit and the occasional loosening of the earth in the bank could have had no other effect than to weaken the support of the overhanging portion. He and his fel-

low workmen were practically making their own working place as an incident to the excavation of the gravel. See *Conroy's Admx.* v. *Nelson and Nelson, supra.* At the very least he must be taken to have known and comprehended the danger of a cave-in. In fact, the evidence indicates that he actually knew and comprehended it, since he joined in warning one of his companions of the fact. The conclusion is inescapable that he assumed the risk, and therefore there was no error in the ruling of the trial court.

*Judgment affirmed.*